SLINKARD, JR. *v.* BABB, WILSON.

[No. 18,289. Filed November 19, 1954.]

*Kelley, Arnold & Kelley, Vincent Kelley,* of Anderson, *Emmanuel H. Baugh,* of Evansville, and *Sanford Trippett,* of Princeton, for appellant.

*Ortmeyer, Bamberger, Ortmeyer & Foreman,* of Evansville, and *Gerald E. Hall,* of Princeton, for appellee, Wilson.

*Waller, McGinnis & Merrill,* of Evansville, and *McDonald & McDonald,* of Princeton, for appellee, Babb.

EMMERT, J. (Dissenting Opinion.)

I cannot agree with the ruling of this court in denying transfer in this cause, which is reported in 125 Ind. App. 76, 112 N. E. 2d 876. There were four automobiles going the same direction involved in successive collisions on the Ohio River bridge near Evansville. For purposes of brevity they will be referred to herein as cars number 1, 2, 3 and 4. No contention is made that the opinion of the Appellate Court does not correctly state the facts, and as stated there, they are as follows:

"Appellant [car No. 2], with his wife and two children, with two hunting dogs in the rear compartment

of the car, were returning from a vacation trip. Appellant was operating his Ford automobile on the highway approaching the Evansville-Henderson bridge which crosses the Ohio river. The highway was icy in spots and one of the witnesses testified that the condition of the surface of the highway on the bridge was solid ice. The appellant was driving his car, at a speed of approximately fifteen miles per hour, about 10:30 p.m., up an incline in a northerly direction approaching the bridge proper and following a car about twelve feet ahead of him in the line of traffic on the East or right-hand side of the highway. The appellee Babb [car No. 3] was operating his car following the appellant Slinkard, and after the cars were one-fourth of the way across the bridge Babb ran his car into the back end of appellant's car, knocking it into the rear end of the car ahead [car No. 1]. Appellee Babb was traveling twenty to twenty-five miles per hour at this time. The car [No. 1] ahead of appellant moved on, stopping only momentarily, and it moved on across the bridge and disappeared. The impact between Babb's car [No. 3] and Slinkard's car [No. 2] broke the front bumper guard from the bumper of appellant's car. Appellant stopped his car with only a few feet separating the back bumper of his car and the front bumper of appellee Babb's car. Following the impact, Slinkard got out of the left front door of his car and picked up the bumper guard, which had been broken off by the force of the collision with the car in front, and put it in the car. He then went immediately to the back of his car and was standing between the back of his car and the Babb car where he met Babb. In the matter of seconds, and not more than one minute after the original impact between his car and Babb's car, the car of appellee Wilson [car No. 4] approached from the South.

The appellant saw the lights of Wilson's car and tried to jump to the East, but was caught between the bumpers of his car and Babb's car as Wilson's car crashed into the rear of Babb's car, and he was injured seriously and permanently. All of the cars were in the driving lane of the bridge which was divided into three lanes and the center lane and the West lane of the bridge at the time were clear of traffic. The bridge and the approach to the bridge is straight for about six-tenths of a mile to the South from where the appellant's automobile was crashed into by the appellee's automobile and there was nothing in that six-tenths of a mile to obstruct the view. The impact caused by the striking of the Babb car by Wilson's car, forcing it against appellant's car and injuring him between the two automobiles, forced the appellant's automobile from thirty to thirty-five feet up an incline, and witnesses described the crash as 'a real loud crash' — 'a terrific crash.' There was some evidence that Wilson's breath smelled of liquor immediately following the crash." It should be added that the force of the collision completely severed plaintiff's right tibia and fibula, and caused considerable hemorrhaging.

The record discloses that before trial the plaintiff served upon defendants a written notice he would request the court to take judicial notice of the statutes and common law of the Commonwealth of Kentucky, and this notice was filed with the court and it properly appears in the record. Under the first section of the Uniform Judicial Notice of Foreign Law Act, "Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States." Section 2-4801, Burns' 1946 Replacement. The notice given fully satisfied the requirements of §2-4804, Burns' 1946 Replace-

ment. Kentucky is a common law jurisdiction, but unless there is an absence of common law decision on a point involved, under the statute we are required to decide questions of substantive law in accordance with the Kentucky decisions and statutes, and no presumption can properly be drawn that the common law of Kentucky is the same as the common law of Indiana unless there is no case in Kentucky on the question.

The matter of pleading was for the jurisdiction of the forum, and logically the burden of proof follows the procedural law on pleading. *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470, 73 N. E. 990; Beale, Conflicts, §595.3, p. 1611; Stumberg, Conflict of Laws, p. 137.

The trial court, by its directed verdict, decided as a matter of law that the drivers of car number 3 and number 4 were not guilty of actionable negligence. The Appellate Court decided as a matter of law that the driver of car number 3 was not guilty of actionable negligence. With this I disagree. Under the law of Indiana, which is the law of the forum, if the facts are in dispute or if reasonable men can draw different inferences from the facts, the question of negligence and proximate cause is for the jury. *Gamble* v. *Lewis* (1949), 227 Ind. 455, 85 N. E. 2d 629, and authorities therein cited.

The Appellate Court correctly held that the question of contributory negligence on the part of the plaintiff driving car number 2 was for the jury, and it correctly held that the question of negligence on the part of Wilson, the driver of car number 4, was also for the jury. However, I think it erred in holding as a matter of law that the acts and omissions of Babb, the driver of car number 3, did not constitute actionable negligence under the law of Kentucky.

The case of *Dixon* v. *Kentucky Utilities Co.* (1943), 295 Ky. 32, 174 S. W. 2d 19, 21, 155 A. L. R. 150, is not in point under the facts in this case. There, a motorist, in escaping the police, drove off the highway and struck and broke a power pole carrying charged wires, causing it to tilt and lean in such a manner that it brought the wires in contact with a barbed wire along the top of the fence. The decedent was an eleven-year-old girl who went out to help put out a grass fire caused by the short of the power line. She came in contact with the fence and was electrocuted. The court held "we still find nothing which even remotely suggests that the circumstances which caused the fence to become charged with electricity from the wire suspended above it were foreseeable" under the facts in the case. In the appeal at bar we cannot say as a matter of law that it was not foreseeable that the negligence of the driver of car number 3 in hitting car number 2 would create such a situation of peril as would result in another collision from the rear by car number 4. Multiple collisions in series occur many times, and with the icy condition of the bridge, such a hazard should be apparent to any reasonable man.

The Dixon case quoted with approval the article by Professor Beale in 33 Harvard Law Review 633, which states:

"If the defendant's active force has come to rest, but in a dangerous position, creating a new or increasing an existing risk of loss, and the foreseen danger comes to pass, operating harmfully on the condition created by defendant and causing the risked loss, we say that the injury thereby created is a proximate consequence of the defendant's act.

. . .

"On the other hand, when defendant's active force has come to rest in a position of apparent

safety, the Court will follow it no longer; if some new force later combines with this condition to create harm, the result is remote from defendant's act. . . .

"The form of rule above stated is believed really to state the true distinction, and the one actually enforced by the Courts. The wording of it, however, is not that ordinarily used. The commonest phrase, probably, is that the injury should be the natural and probable result of the act, a phrase which involves at least a misuse of both adjectives. A more accurate phrase, which is gaining in use, is that the intervening force, unless it is to make the result remote, must be foreseeable."

In *Ky. Independent Oil Co.* v. *Schnitzler, Admr.* (1925), 208 Ky. 507, 514, 515, 271 S. W. 570, the court, in conformity with the general rule, stated the foreseeable test for a successive tort feasor as follows:

"That appellant set in motion forces which ultimately resulted in damage to appellee's decedent of a kind that the law will notice and give redress for must be conceded. Does the fact that a second human actor, not acting in concert with a first human actor, intervenes with a tortious act which begins later in time to a tortious act of the first actor and which second tortious act is the only force in active motion at the time of the damage, exonerate the first actor from liability? Although the second human actor may be liable it does not necessarily follow that the first is exonerated. By the decided weight of authority the first will be liable if he foresaw or ought to have foreseen the commission of the second's tort. Although the earlier view was that the prior tort feasor was never liable where a later tort feasor intervened— see Vicars v. Wilcocks, 8 East. 1 (1806)—yet it has gradually come to be admitted that the earlier tort feasor is liable in cases where the commission of the subsequent unlawful or tortious act and the happening of the damages ought to have been foreseen by him as not unlikely to follow. A leading case supporting this modern view from this jurisdiction is that of Watson v. K. & I. Bridge & R. Co., 137 Ky. 619, 126 S. W. 146, 129 S. W. 341. In

this case a carload of gasoline was negligently derailed and the gasoline negligently allowed to escape into the surrounding streets. One Duerr, in passing by, lit a cigarette and then threw the match, still lighted, into the gutter where a lot of gasoline was. An explosion took place. There was some evidence to show that Duerr knew of the presence of the gasoline in the neighborhood and that he maliciously threw the lighted match into it because of his hatred of the railroad, his former employer. This court held that if the act of Duerr was wilful then the railroad was not responsible for the ensuing explosion, but if it was accidental or negligent the railroad was not relieved of responsibility for its prior negligence in the derailment of the car and the escape of the gasoline, since it should have foreseen such an accidental or negligent act on the part of some one which, coupled with its own negligence, would result in the explosion that occurred."

The second collision occurred in a matter of seconds "and not more than one minute after the original impact." The driver of car number 3 placed plaintiff and his automobile in a position of peril on an icy bridge in the night-time, when it was reasonable to expect other cars might be driving at a negligent speed. It was for the jury to say whether the negligence of the driver of car number 3 in hitting car number 2 was a proximate cause of the collision by the driver of car number 4. I would have reversed the judgment as to both drivers.

NOTE.—Reported in 122 N. E. 2d 463.