**STATE of Indiana, Indiana Highway Commission, Indianapolis Power & Light Co., Comcast Cablevision of Indianapolis, Inc., and Contractors United, Inc., Appellants–Defendants,**

v.

**Kenneth D. CORNELIUS and Marcia Cornelius, Appellees–Plaintiffs.**

No. 55A01–9212–CV–410.

Court of Appeals of Indiana, Fifth District.

July 14, 1994.

Transfer Denied Dec. 2, 1994.

196

Karl L. Mulvaney, Nana Quay–Smith, Robin L. Babbitt, Bingham Summers Welsh & Spilman, Kent O. Stewart, Charles F. Miller, Jr., Stewart Due Miller & Pugh, Peter B. Stewart, Alison T. Frazier, Stewart & Irwin, Indianapolis, IN, for appellants.

Lance D. Cline, Cline Farrell Christie & Lee, Indianapolis, IN, for appellees.

BARTEAU, Judge.

Kenneth and Marcia Cornelius sued the Indiana Highway Commission, Contractors United, Inc., Indianapolis Power & Light, and Comcast Cablevision for negligence after Kenneth was seriously injured in a motorcycle accident. The four defendants filed motions for summary judgment, each arguing that it did not owe a duty to Cornelius and that its conduct was not a proximate cause of Cornelius's injury. The trial court denied the motions for summary judgment and certified the issues for interlocutory appeal. This court granted the petition for interlocutory appeal on February 22, 1993. Comcast and IPL filed separate briefs on appeal. The Highway Commission and Contractors United filed a joint brief. This court heard oral argument on April 6, 1994.

## ISSUES

1. Whether IPL, Comcast, Highway Commission or Contractors United owed a duty to protect Cornelius from injuries incurred when Cornelius, riding on his motorcycle, was hit by a car and slid into a utility pole located on a traffic island in a highway intersection; and

2. Whether a jury could conclude that the acts or omissions of each of the defendants was a proximate cause of Cornelius's injury.

We affirm in part and reverse in part.

## FACTS

On September 2, 1987, Cornelius was traveling northeast on State Road 67 on his motorcycle. As he approached the intersection of S.R. 67 and Milhouse Road, he noticed a car traveling east on Milhouse Road, approaching the intersection. The car, driven by Virginia Kyer, crossed the two southwest bound lanes of S.R. 67 and pulled into the median. The car slowed almost to a stop twice, and then pulled out into the northeast bound lanes of S.R. 67, hitting the rear of Cornelius's motorcycle. The motorcycle was knocked down and slid, with Cornelius still on it, approximately 25 feet into an IPL utility pole located on an island on the northeast corner of the intersection. The collision with the pole resulted in a traumatic amputation of Cornelius's right leg below the knee. There is no dispute that the collision between Kyer and Cornelius was the result of Kyer's negligence.

The utility pole was located on a grass traffic island, triangular in shape, and that originally had a curb located around its outside perimeter. The traffic island was surrounded by roadway. To the west of the island were the northeast bound lanes of S.R. 67. To the south of the island was the westbound lane of Milhouse Road. Running from the north edge of the island to the southeast edge of the island was a turning lane for traffic turning from westbound Milhouse Road onto northeast bound S.R. 67. The utility pole was at least ten to twelve feet away from the traveled portion of the roadway. The shoulder was ten feet wide and the pole was located off the shoulder about another foot to two feet.

At the time of the accident, S.R. 67 was being repaved by Contractors United pursuant to a contract with the Highway Commission. The project did not entail widening the road, but it did increase the asphalt portion of the berm by two or three feet. As part of the project, the traffic island was to be removed, necessitating removal of the pole. At the time of the accident, Contractors United had removed the curb around the island and had put asphalt down and a flasher barrier in front of the pole. IPL had been notified by the Highway Department in late 1986 that the pole would need to be removed and was asked by Contractors United twice in July, 1987, to remove the pole. Contractors United began the reconstruction work at the site on July 28, 1987. IPL could not remove the pole until Comcast removed its cables from the pole, but Comcast could not remove its cables from the pole until after IPL removed its wires and had a replacement pole in place. IPL did that on August 25, 1987, and Comcast received notice of that from the Highway Department on September 3, 1987, the day after Cornelius's accident. IPL's pole had been at that location since at least 1973 and IPL had never received notice of a motor vehicle accident involving the pole.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and he is entitled to judgment as a matter of law. Once the movant has sustained this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the nonmoving party. *Collins v. Covenant Mut. Ins. Co.* (1992), Ind.App., 604 N.E.2d 1190, 1194.

## DUTY

Each defendant argues that it did not owe a duty to Cornelius under the facts of this case. The Indiana Supreme Court has identified three factors that must be analyzed and balanced to determine whether a defendant owed a duty to the plaintiff: (1) the relationship between the parties, (2) the foreseeability of harm to the plaintiff, and (3) public policy concerns. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh'g denied.* While the determination of whether these three factors will lead to imposition of a duty is generally a matter for the court to decide, factual questions may be interwoven with the determination of the existence of a relationship and the foreseeability of harm, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder. *Harper v. Guarantee Auto Stores* (1989), Ind.App., 533 N.E.2d 1258, 1261–62. All of the defendants make the same argument that the foreseeability factor weighs against imposition of a duty. Thus, we will discuss that factor first and will then discuss the relationship and public policy factors for each defendant individually.

### Foreseeability

■ Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause.... We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct.

*Webb,* 575 N.E.2d at 997. Relying on *NIPSCO v. Sell* (1992), Ind.App., 597 N.E.2d 329, *trans. denied,* the defendants argue that the harm to Cornelius was not foreseeable because they were only required to anticipate the ordinary and usual use of the highway. In *Sell,* a passenger in a car was injured when the car crossed the center line and opposing lane of traffic, slid down an embankment and struck a utility pole. The court held that NIPSCO was not required to anticipate that the driver of the car in which Sell was a passenger "would fall asleep, thereby losing control of his vehicle, enabling it to cross the center line and opposing lane of traffic, proceed another thirteen feet down an embankment, striking the pole." *Id.* at 332; *see also Oram v. New Jersey Bell Telephone Co.* (1975), 132 N.J.Super. 491, 334 A.2d 343 (not foreseeable that one car would force another car off the road into a utility pole two feet from the traveled portion of the road). The defendants argue that they likewise need not have anticipated that "Kyer would cross two lanes of traffic, stop in the median, pull out suddenly, strike Cornelius' motorcycle thereby causing it to slide twenty-five (25) feet, cross the berm and hit a utility pole located off the travel portion of the highway." Brief of Appellant, Indianapolis Power & Light Co., p. 14. Thus, the defendants contend that the factor of foreseeability weighs against imposing a duty.

The court in *Sell* recognized that a utility company *could* owe a duty to persons injured outside the traveled portion of the roadway, citing *McMillan v. Michigan State Highway Commission* (1986), 426 Mich. 46, 393 N.W.2d 332, where a pole was located in the median and within three feet of the traveled portion of the road, and *Vigreaux v. Louisiana Dep't of Transportation & Development* (1988), La.App., 535 So.2d 518, where a pole was located eight inches from the street and immediately following a "sharp 90 degree curve in the roadway" and the utility company had notice of prior accidents. *Sell,* 597 N.E.2d at 333. "Although in some cases it would be reasonably foreseeable that motorists (or their occupants) would leave the traveled portion of a road and strike a utility pole, there are no facts in the present case susceptible of that inference." *Id.* at 334.

We agree with Cornelius that this case is distinguishable from *Sell* because there are facts in this case susceptible of the inference that it was foreseeable a motorist would leave the traveled portion of the road and strike the utility pole. In *Copeland v. Public Service Co. of Indiana* (1952), 123 Ind.App. 345, 108 N.E.2d 273, *trans. denied,* this court held that whether the defendant who laid utility poles along a highway within two or three feet of the pavement should have foreseen that a motorist would run off the pavement and strike a pole presented a question of fact for the jury. *See also Yater v. Keil* (1976), 170 Ind.App. 135, 351 N.E.2d 920 (question of fact for the jury whether it was foreseeable that a motorist would let the right front wheel drop off the edge of the pavement and strike an adjoining culvert that protruded higher than the pavement).

Here, the utility pole was located in a traffic island surrounded by roadway, the curb surrounding the island had been removed, and the pole was only one to two feet from the shoulder of S.R. 67. Further, the traffic island in which the pole was located was at an intersection of a state highway and a secondary road. The jury could conclude that it is foreseeable that collisions will occur in an intersection and that one of the motor vehicles will leave the traveled portion of the highway. Given the proximity of the pole to the intersection, the jury could likewise conclude that it is foreseeable that the motor vehicle could strike the pole. A question of fact to be resolved by the jury exists. If the jury concludes that it was foreseeable that a motorist would leave the roadway and strike the utility pole, then the foreseeability factor would weigh in favor of imposing a duty on the defendants.

Next, we analyze the relationship element of duty for each defendant.

### Relationship

#### IPL

IPL acknowledges that Ind.Code 8–20–1–28, as in effect in 1987, imposed a duty on a utility company to erect and maintain utility poles "in such a manner as not to incommode the public in the use of such roads, highways, and water...." However, IPL points to the language in *Sell,* 597 N.E.2d at 332, that limits that duty to "those members of the public using state highways as they were intended to be used." The court held that the utility did not have a relationship with respect to the injured passenger because the use of the highway was not legitimate once the car crossed the center line and opposing lane of traffic. *Id.* IPL argues that it likewise has no relationship with Cornelius because Cornelius was not properly using S.R. 67 once Kyer collided with him and sent him sliding across the highway. Cornelius argues that he was using the highway as it was intended to be used because "[h]e was driving his motorcycle where he had a legal right to drive it and was complying with all applicable traffic regulations at all times." Brief of Appellees, p. 17. Although the court in *Sell* determined that a relationship exists only with a person using the highway as intended, we believe that whether the highway was being used as it was intended to be used is a more appropriate consideration under the foreseeability factor. Clearly, I.C. 8–20–1–28 evidences a relationship between the utility erecting poles along the highway and the public which uses the roads. Cornelius was clearly a user of a road. Thus, we have no difficulty concluding that a relationship exists on which a duty could be premised.

### Comcast

█ Comcast contends that it has no relationship to Cornelius because it was a mere licensee using IPL's pole, and not the owner of the pole. We agree. Comcast had nothing to do with the placement of the utility pole, thus, it could not have a duty to use reasonable care in the placement of the pole. Cornelius argues that the requisite relationship came about when Comcast became aware that IPL needed to remove the pole and that Comcast would have to remove its cables before before IPL could remove the pole. We fail to see how this created a relationship between Comcast and a user of the highway. It certainly exhibits a relationship between Comcast and IPL, and may even exhibit some causal connection between Comcast and Cornelius striking the pole, but it does not create a relationship between Comcast and Cornelius that could support imposition of a duty on Comcast with respect to Cornelius. Comcast did not have any authority, as a mere licensee, to remove IPL's pole. Thus, the relationship factor weighs against imposing a duty. *See Lang v. Prince* (1984), La.App., 447 So.2d 1112, *writ denied* (utility company not liable for injuries to plaintiff who struck telephone pole owned by telephone company where utility company did not participate in relocation of the pole and was merely allowed to use the pole to string its lines pursuant to a joint-use agreement with telephone company).

### Highway Commission and Contractors United

█ The Highway Commission recognizes that it has a general duty to exercise reasonable care in the design, construction, and maintenance of its highways for the safety of public users. *See Elliott v. State* (1976), 168 Ind.App. 210, 342 N.E.2d 674. Contractors United also acknowledges that it has a duty to protect the public against obstructions in the highway resulting from its work. *See Koroniotis v. LaPorte Transit, Inc.* (1979), Ind.App., 397 N.E.2d 656. Like IPL, the Highway Commission and Contractors United rely on *Sell*, 597 N.E.2d 329, to argue that their respective duties to the public did not extend to Cornelius because Cornelius was not using the highway as it was intended to be used once he was struck by Kyer. As we stated above, however, whether Cornelius was using the highway as it was intended to be used goes to the foreseeability factor and not the relationship factor. That Cornelius was a member of the public using the highway is sufficient to establish the requisite relationship between the Highway Commission and Cornelius and between Contractors United and Cornelius.

Having discussed the foreseeability and relationship aspects of duty, we now discuss whether the public policy component weighs in favor of imposition of a duty as to each defendant.

### Public Policy

### IPL

█ IPL again relies on *Sell* to argue that public policy concerns weigh against imposing a duty. In *Sell*, the court noted that I.C. 8–20–1–28 gives utilities the qualified right to locate poles along the highways of Indiana and that Indiana has "long recognized the substantial public interest that is served by the grant and exercise of this right." *Id.* In *Sell*, NIPSCO could not have relocated its pole more than seven inches further from the highway without the pole being at least partially on private property. The court concluded:

> [t]o hold NIPSCO to a duty in this situation would be to impose absolute liability upon utilities for such accidents, for there are undoubtedly thousands of poles similarly installed in this state. We are not prepared to say that a utility is the insurer of all persons injured by utility poles that otherwise pose no unreasonable risk of harm.

*Id.* Cornelius distinguishes *Sell* by pointing to the fact that here, IPL could relocate the pole, had been requested to do so by the Highway Department, and in fact was planning to relocate the pole. We agree with Cornelius that under the facts of this case, public policy concerns should not prevent imposing a duty.

## Comcast

■ Comcast argues that public policy militates against imposing a duty because as a licensee it lacked control over the placement of the pole and removal of the pole. Cornelius counters that under the facts of this case, public policy weighs in favor of imposing a duty so that Comcast is not rewarded for failing its "legal obligation" to remove its cable from the pole. We agree with Comcast that public policy weighs against imposition of a duty on the part of Comcast where it had no part in the decision of the placement of the pole or the decision to remove the pole.

## Highway Commission and Contractors United

■ The Highway Commission and Contractors United argue that public policy concerns militate against imposing a duty because they did not have the authority to remove the pole but did erect a flasher barricade to warn motorists of its presence. Further, they argue it would be unreasonable to close a major state highway for one year to guard against an unforeseeable accident. The Highway Commission and Contractors United are confusing the imposition of a duty with the finding that they breached that duty. Whether they had the authority to remove the pole or should have closed the highway go to the question whether the duty to protect Cornelius was breached, not the question whether the duty existed in the first place. We can discern no public policy concerns that should preclude imposition of a duty here. The Highway Commission and Contractors United have already acknowledged their general duty to the motoring public, of which Cornelius was a member.

## Conclusion

With respect to IPL, the Highway Commission and Contractors United, because the relationship and public policy factors of the duty analysis weigh in favor of imposing a duty, and because there is a genuine issue of material fact whether the foreseeability factor weighs in favor of imposing a duty, we hold that the trial court properly denied summary judgment to IPL, the Highway Commission and Contractors United on the issue whether they owed a duty to exercise reasonable care with respect to Cornelius.

However, because the relationship and public policy factors weigh against imposing a duty on Comcast, we hold that Comcast did not have a duty with respect to Cornelius. It was merely a passive user of the pole and as such did not have a duty to the motoring public with respect to placement of the pole. Thus, the trial court erred in denying Comcast's motion for summary judgment.

### PROXIMATE CAUSE

■ None of the defendants argue on appeal that summary judgment should have been granted in their favor because they did not breach any duty of care that may have been owed to Cornelius; thus, we do not address the element of breach of duty. Each of the defendants do, however, make the same argument that its conduct was not the proximate cause of Cornelius's injuries because the negligence of Kyer in colliding with Cornelius was an intervening act which was the proximate cause of Cornelius's injuries. Defendants draw an analogy to the "second collision" cases. In those cases, where a collision is caused by A's negligence and B then negligently collides with the first collision, resulting in injuries, the courts have held that A's negligence was not a proximate cause of the injuries resulting from B's negligence. A's negligence merely furnished a condition by which the injury was made possible, but B's negligence was unforeseeable and thus an intervening force breaking the chain of causation between A's negligence and the injuries. *See Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154; *Slinkard v. Babb* (1953), 125 Ind.App. 76, 112 N.E.2d 876, *trans. denied*, 233 Ind. 633, 122 N.E.2d 463 (1954). In other words, the defendants argue that assuming they did owe a duty to Cornelius and breached that duty by creating a dangerous condition, Kyer's negligence was an unforeseeable intervening force that broke the chain of causation between the defendants's negligence and Cornelius's injuries.

Where there is an original wrongful act of defendant and an intervening act of a third

person, a fundamental test in determining defendant's liability for his wrongful act is the test of foreseeability of the resultant injury, and where the question of an independent intervening agency is involved, one who is charged with negligence cannot be held responsible for the result of such negligence, unless some type of injury and the intervention of the independent agency should have reasonably been anticipated. Similarly stated, where there is an independent responsible agency intervening between the defendant's negligence and the injury, the question whether the original negligence is the proximate cause of the injury is to be determined by whether the agency might have been reasonably expected under the circumstances to intervene in such a way as to be likely to produce an injury similar to the one actually caused.

Accordingly, if harm is a natural, probable, and foreseeable consequence of the first negligent act or omission, the original wrongdoer may be held liable even though other independent agencies intervene between his negligence and the ultimate result.

*Havert,* 452 N.E.2d at 158–159 (quoting 21 I.L.E. *Negligence* § 67, at 330–333 (1959)). Thus, the fundamental test of proximate cause remains reasonable foreseeability where there is an independent, intervening act. *Lutheran Hospital of Indiana, Inc. v. Blaser* (1994), Ind.App., 634 N.E.2d 864. The question of proximate cause depends upon whether the independent, negligent act could have been reasonably expected under the circumstances to intervene in such a way as to produce an injury similar to the one that occurred. *Id.*

The case at bar is distinguishable from the "second collision" cases relied upon by the defendants. In those cases, the original negligent act caused the first collision—the anticipated result that made the act negligent—but no harm to the plaintiff. An unexpected second collision, brought about by the combination of the condition resulting from the first collision and the negligence of the second collider, caused the injuries to the plain-tiffs. In other words, the injuries to the plaintiffs were not those within the zone of risk created by the defendants's original negligent act leading to the first collision. *See Havert,* 452 N.E.2d 154; *Slinkard,* 125 Ind. App. 76, 112 N.E.2d 876. Here, however, if the defendants were negligent in the placing of the pole or exposing the pole during the construction work because it was foreseeable that a collision in the intersection would occur causing a motorist to strike the pole, they were negligent because the pole created a hazard for a motorist leaving the traveled portion of the highway and striking the pole. That is exactly what occurred. Thus, whether the injury to Cornelius was within the zone of foreseeable risk created by the defendants, such that there was no intervening cause that created a different, unforeseeable zone of risk, is a question of fact for the jury. Consequently, the trial court properly denied IPL's, the Highway Commission's and Contractors United's motions for summary judgment.

## CONCLUSION

A genuine issue of material fact exists as to whether the harm to Cornelius was reasonably foreseeable by IPL, the Highway Commission and Contractors United. Thus, the trial court properly denied their motions for summary judgment on the issues of duty and proximate cause. We hold that, as a matter of law, Comcast did not owe a duty to Cornelius. Thus, the trial court erred in denying Comcast's motion for summary judgment and on remand is directed to enter summary judgment in favor of Comcast.

AFFIRMED IN PART AND REVERSED IN PART.

SHARPNACK, C.J. and HOFFMAN, J., concur.