Kristy **HUMPHERY** as Personal Representative of the Estate of Charles Mandrell, Jr., Appellant–Plaintiff,

v.

**DUKE ENERGY INDIANA, INC.,** Appellee–Defendant.

No. 49A02–0903–CV–216.

Court of Appeals of Indiana.

Nov. 12, 2009.

C. Dennis Wegner, C. Dennis Wegner & Associates, P.C., Indianapolis, IN, Attorney for Appellant.

Steven J. Moss, Duke Energy Business Services LLC, Plainfield, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Kristy Humphery, as personal representative of the estate of Charles Mandrell, Jr., appeals from the trial court's summary judgment for Duke Energy Indiana, Inc. ("Duke Energy"). Humphery alleged in her complaint that Duke Energy acted negligently when it placed a utility pole near an intersection in Johnson County, which became a proximate cause of Mandrell's death. On appeal, the parties dispute only whether Duke Energy could have reasonably foreseen Mandrell's collision with its utility pole.

Reversed and remanded.

### FACTS AND PROCEDURAL HISTORY

At about 6:00 a.m. on June 17, 2005, Mandrell was driving southbound on Graham Road in Franklin. Graham Road is a straight two-lane road with a posted speed limit of forty miles per hour. Mandrell stopped at the four-way stop at the intersection with Earlywood Drive, a straight east-west road with a posted speed limit of thirty miles per hour, and then proceeded into the intersection. At the same time, John Albertson, Jr., was driving eastbound on Earlywood Drive. Albertson disregarded the four-way stop and collided with the passenger's side of Mandrell's vehicle. Albertson's vehicle pushed Mandrell's vehicle through and out of the intersection, off the road, and into Duke Energy utility Pole 817–001 ("the Pole"). The force of the collision with the Pole crushed and wrapped the driver's door of Mandrell's vehicle around the Pole and cracked the Pole, causing it to lean to one side. Mandrell sustained fatal blunt force trauma as a result of the secondary collision with the Pole and was pronounced dead at the scene. The reporting police officer's subsequent report stated that Albertson had been "blinded" by the sun and that Albertson "did not appear to be or display any

evidence that he was intoxicated or impaired." Appellant's App. at 308. However, Albertson admitted to the officer that he had smoked marijuana the night before.

Although it is unclear when the Pole was originally installed, in 1981 Duke Energy's predecessor-in-interest took ownership of the Pole. In 1998, Duke Energy replaced the Pole, and the new Pole was placed substantially near to the original location. That location is 6.6 feet southeast of the Earlywood Drive–Graham Road intersection [1]; approximately thirty feet from the midpoint of the point-of-impact between Albertson's and Mandrell's vehicles; 14.5 feet from the eastern edge of Graham Road; and 8.6 feet from the southern edge of Earlywood Drive. The Pole was 7.5 feet east of the right-of-way for Graham Road and 2.5 feet south of the right-of-way for Earlywood Drive. There is no curb at the intersection of Graham Road and Earlywood Drive, and there is no history of accidents in the record either at the intersection or with the Pole.

More than ten months after the accident, on April 27, 2006, the State charged Albertson with a Class D felony count of causing serious bodily injury while operating a motor vehicle with a schedule I or II controlled substance, namely, marijuana, in his body. As evidence, the State submitted Albertson's blood test results following the accident, which showed "the presence of 5.0 ng/mL of Delta–9 Carboxy THC in Albertson's blood." *Id.* at 86. Albertson pleaded guilty as charged on April 12, 2007, and the trial court sentenced Albertson to 1095 days in the Indiana Department of Correction.

1. The edge of the pavement coincides with the end of the right-of-way.

2. The third amended complaint named other defendants as well, but the parties stipulated

On June 15, 2007, Humphery filed her third amended complaint for damages against Albertson and Duke Energy.[2] On October 1, 2008, Duke Energy filed its motion for summary judgment. In opposing that motion, Humphery submitted, among other evidence, the affidavit of Lance E. Robson, a professional engineer. Robson testified that:

(d) The struck pole is located on the corner of the intersection of two heavily trafficked rural roadways, *within the curve radius, an area recognized as being vulnerable to vehicles going off the road as a result of an intersection crash, and an area recognized as having an increased potential for crashes.*

(e) At the corner of Graham Road and Earlywood Drive, the appropriate curve radius is 30 feet.

7. It is my professional opinion that the struck pole was within the curve radius, an area that should have been free of unyielding objects....

8. It is my professional opinion that the presence of [Pole] 817–001 within an area that should have been clear of obstructions and in close proximity to the roadway was an unreasonably dangerous condition.

*Id.* at 425–26 (emphasis added; citations omitted).

Humphery also submitted the affidavit of Bruce E. Enz, who has more than thirty years of experience in traffic accident investigation and reconstruction. Enz testified as follows:

9.... This is referred to as a "four way stop" intersection. When accidents occur at four way stop intersections where both vehicles start up from a stop, the

to the dismissal of those defendants at various times prior to the trial court's order on summary judgment.

accident is usually of a minor nature and the vehicles do not leave the traveled way.

10. On some occasions at a four way stop intersection, for one reason or another, one vehicle fails to stop for a stop sign and "runs" one of the stop signs at or near the posted travel speed. In some instances the vehicle that "runs" the stop sign strikes another vehicle that has stopped and then pulled into the intersection. The result is the two vehicles will travel off at an angle and depart into the corner of the intersection that is at an angle from the two vehicles' travel directions. Any utility pole located in the immediate corner area the vehicles are traveling onto has the highest exposure for secondary impact with the vehicles in their post[-]crash trajectories.

*Id.* at 330–31.

Regarding Albertson's blood test, Humphery submitted the affidavit of Dr. Daniel J. McCoy, a toxicologist with more than thirty years of experience. Dr. McCoy reviewed Albertson's blood test and testified that "Delta–9 Carboxy THC is not an active drug and it does not cause impairment. [ ] It is my professional opinion that 5.0 ng/mL of Carboxy THC in [Albertson's] blood ... cannot be related to any impairment of his judgment or his ability to operate a motor vehicle." *Id.* at 311.

The trial court held a hearing on Duke Energy's motion on February 13, 2009. On February 23, the court entered summary judgment in favor of Duke Energy. That same day, the parties stipulated to the dismissal of Albertson from Humphery's cause of action. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

Our standard of review is well established:

When reviewing a grant or denial of summary judgment our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. However, questions of law are reviewed de novo.

*Florio v. Tilley,* 875 N.E.2d 253, 255 (Ind. Ct.App.2007) (citations omitted).

Humphery maintains that Duke Energy acted negligently in its placement of the Pole. Humphery's burden on her negligence claim is well settled:

To prevail on a claim of negligence a plaintiff is required to prove: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach. A negligent act is the proximate cause of an injury if the injury is a natural and probable consequence, which in light of the circumstances, should have been foreseen or anticipated.

Summary judgment is rarely appropriate in negligence cases. Issues of negligence, contributory negligence, causation, and reasonable care are more appropriately left for the determination of a trier of fact. Nonetheless, the issue

of proximate cause becomes a question of law where only a single conclusion can be drawn from the facts.

*Id.* at 255–56 (citations omitted).

### Duke Energy's Duty to Mandrell

As an initial matter, Duke Energy attempts to distinguish the cases relied upon by Humphery on the basis that those cases engage in a fact-specific foreseeability analysis with respect to a defendant's general duty to motorists, not whether the defendant proximately caused the plaintiff's injuries. It is true that Humphery spends a significant portion of her appellant's brief arguing that Duke Energy owed a duty of reasonable care to motor vehicle operators, such as Mandrell, when it placed the Pole. *See* Appellant's Brief at 10–18, 20, 22–24. Specifically, Humphery cites various cases supporting her claim that Duke Energy owes a general duty to motorists, *see, e.g., Goldsberry v. Grubbs,* 672 N.E.2d 475, 479–81 (Ind.Ct.App.1996), *trans. denied,* and she presents evidence of national and local crash statistics, road usage data for Graham Road and Earlywood Drive, and the availability of an alternative safe placement of the Pole. But Duke Energy concedes that it had "a duty of reasonable care in placing its pole." Appellee's Brief at 8. Thus, the question of Duke Energy's general duty to Mandrell is not disputed on appeal. Instead, Duke Energy contends that it "could not reasonably foresee the type of accident that caused Mandrell's death." *Id.* at 5.

■ Although Duke Energy concedes that it had general duty to motorists, its attempt to distinguish the cases relied upon by Humphery is based on a distinction without a difference. The element of duty, like that of proximate cause, requires an evaluation of foreseeability. *See Carter v. Indianapolis Power & Light Co.,* 837 N.E.2d 509, 515–20 (Ind.Ct.App.2005), *trans. denied.* Some case law from this court holds that the analysis of the foreseeability component of duty is not fact-specific, unlike the analysis for determining proximate cause:

> By logical deduction, the foreseeability component of the duty analysis must be something different than the foreseeability component of proximate cause. More precisely, it must be a lesser inquiry; if it was the same or a higher inquiry it would eviscerate the proximate cause element of negligence altogether. If one were required to meet the same or a higher burden of proving foreseeability with respect to duty, then it would be unnecessary to prove foreseeability a second time with respect to proximate cause. Additionally, proximate cause is normally a factual question for the jury, while duty is usually a legal question for the court. As a result, the foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence.

*Goldsberry,* 672 N.E.2d at 479 (citations omitted); *see also Carter,* 837 N.E.2d at 519 ("We acknowledge that *Goldsberry's* foreseeability analysis has been called into question, but we agree with its ultimate conclusion ... that consideration of the circumstances of a particular collision is more properly left for analyzing breach and proximate cause."). Other case law, however, holds that the foreseeability analysis with respect to a party's duty is fact-specific and, as such, identical to the foreseeability analysis for proximate cause. *E.g., State v. Cornelius,* 637 N.E.2d 195, 198 (Ind.Ct.App.1994) ("part of the inquiry into the existence of a duty is concerned

with exactly the same factors as is the inquiry into proximate cause") (quotations omitted), *trans. denied.*

■ Here, the parties' use of case law commingles duty and proximate cause foreseeability in addressing the question of Duke Energy's placement of the Pole. But how the fact-specific foreseeability analysis is framed by the parties or in other cases is not dispositive. Ultimately, the test of foreseeability is the same under either the fact-specific question of duty or the question of proximate cause. *See id.* As such, insofar as a case or argument focuses upon particular facts to determine whether Duke Energy should reasonably have foreseen the type of harm Mandrell suffered, that analysis is incorporated below into the discussion of proximate cause. And we address the issue here as one of proximate cause because the parties do not dispute Duke Energy's general duty of reasonable care to motorists.

### Proximate Causation

#### Overview

In *Carter*, we stated:

Whether an act is the proximate cause of an injury[ ] depends upon whether the injury was a natural and probable consequence of the negligent act which, in light of the attending circumstances, could have been reasonably foreseen or anticipated. The negligent act must set in motion the chain of circumstances which contribute to or cause the resulting injury. However, the chain of causation may be broken if an independent agency intervenes between the defendant's negligence and the resulting injury. The key to determining whether an intervening agency has broken the original chain of causation is to decide whether, under the circumstances, it was rea-

sonably foreseeable that the agency would intervene in such a way as to cause the resulting injury. If the intervening cause was not reasonably foreseeable, the original negligent actor is relieved of any and all liability resulting from the original negligent act. The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified. Although the issue of proximate cause is often determined by the trier of fact, where it is clear that the injury was not foreseeable under the circumstances and that the imposition of liability upon the original negligent actor would not be justified, the determination of proximate cause may be made as a matter of law.

837 N.E.2d at 520–21 (quotation and citation omitted).

Humphery contends that a genuine issue of material fact precludes the trial court's grant of summary judgment for Duke Energy. In response, Duke Energy argues that the summary judgment motion should be affirmed for two reasons. First, Duke Energy asserts that there is nothing inherently dangerous in the location of the Pole. Second, Duke Energy contends that Albertson's negligent act of not stopping at the intersection was an intervening cause that relieved Duke Energy of any liability it might have otherwise had in its placement of the Pole. On each of those points, the parties dispute the relevance of various opinions of this court. We address the parties' contentions after a brief review of that authority.

#### Background Case Law

The parties dispute the application to this appeal of six[3] opinions of this court.

3.  Humphery also cites *Sparks v. White*, 899

N.E.2d 21 (Ind.Ct.App.2008). But that case

First, Humphery relies on *Ousley v. Board of Commissioners of Fulton County*, 734 N.E.2d 290 (Ind.Ct.App.2000), *trans. denied.* In that case, a driver, Wagner, failed to yield at a four-way stop at the intersection of two county roads. Wagner's vehicle collided with Ousley's vehicle and pushed Ousley's vehicle through and out of the intersection and into a steel fencepost. The fencepost was located six and one-half feet from the edge of the road on which Ousley had been traveling. Ousley died from the collision, and his estate brought suit against the landowner who had erected the fencepost.

On appeal, we held there was a genuine issue of material fact as to whether the landowner could reasonably have foreseen harm such as that suffered by Ousley from the placement of the fencepost:

the evidence indicates that nothing about the intersection made it particularly dangerous. There is no history of accidents occurring at this intersection. However, the fencepost is located only six and one-half feet from the pavement. From this evidence, we cannot agree with the trial court that it was not foreseeable as a matter of law that motorists would strike the post.

*Id.* at 296.

Humphery also cites *Cornelius*. There, the driver of a car hit the rear of a motorcycle, causing the motorcycle to fall over and slide into a utility pole owned by Indianapolis Power and Light Company ("IPL"). IPL's pole was twenty-five feet from the point of impact of the vehicles and "located on a grass traffic island" at the northeast corner of a nearby intersection. 637 N.E.2d at 197. IPL "had never received notice of a motor vehicle accident

involving the pole." *Id.* The parties on appeal agreed that the driver of the car was driving negligently when she struck the motorcycle.

On appeal, we held that IPL was not entitled to summary judgment. Specifically, we stated:

Here, the utility pole was located in a traffic island surrounded by roadway, the curb surrounding the island had been removed, and the pole was only one to two feet from the shoulder of S.R. 67. Further, the traffic island in which the pole was located was at an intersection of a state highway and a secondary road. The jury could conclude that it is foreseeable that collisions will occur in an intersection and that one of the motor vehicles will leave the traveled portion of the highway. Given the proximity of the pole to the intersection, the jury could likewise conclude that it is foreseeable that the motor vehicle could strike the pole. A question of fact to be resolved by the jury exists. If the jury concludes that it was foreseeable that a motorist would leave the roadway and strike the utility pole, then the foreseeability factor would weigh in favor of imposing a duty on the defendants.

*Id.* at 199.

The *Cornelius* court also addressed the question of whether the driver's negligence constituted an intervening act that relieved IPL of liability for its potentially negligent placement of the utility pole. After noting that "the fundamental test of proximate cause remains reasonable foreseeability where there is an independent, intervening act," this court held:

is inapposite to this appeal. In *Sparks*, neither party submitted any evidence indicating why the plaintiff had left the road and collided with a brick mailbox three feet from the

side of the road. *Id.* at 30. Here, however, there is ample evidence explaining what happened. The only question is how the law applies to those facts.

if the defendants were negligent in the placing of the pole or exposing the pole during the construction work because it was foreseeable that a collision in the intersection would occur causing a motorist to strike the pole, they were negligent because the pole created a hazard for a motorist leaving the traveled portion of the highway and striking the pole. That is exactly what occurred. Thus, whether the injury to Cornelius was within the zone of foreseeable risk created by the defendants, such that there was no intervening cause that created a different, unforeseeable zone of risk, is a question of fact for the jury. *Id.* at 202.

The remaining four cases, which are cited by Duke Energy, are inapposite to this appeal. Each of those four cases shares a common, critical fact: it was undisputed that the plaintiff in each case was the driver, or the passenger with a driver, who was not traveling the roadway with reasonable care at the time of the accident. *See Witmat Dev. Corp. v. Dickison*, 907 N.E.2d 170 (Ind.Ct.App.2009) (plaintiff-driver was driving drunk when he missed a turn and landed in a quarry 230 feet away), *trans. denied; Carter*, 837 N.E.2d 509 (plaintiff-passenger was "jump[ing] the hills" on a road at twice the posted speed limit when driver lost control and hit utility pole); *Bush v. N. Ind. Pub. Serv. Co.*, 685 N.E.2d 174 (Ind.Ct.App.1997) (plaintiff-driver was speeding through an S-curve when he lost control, went off-road, and hit utility pole 200 feet away), *trans. denied: N. Ind. Pub. Serv. Co. v. Sell*, 597 N.E.2d 329 (Ind.Ct.App.1992) (plaintiff-driver fell asleep, crossed the median, and hit a utility pole), *trans. denied.* In *Carter, Bush,* and *Sell* this court stated that the defendant could not have reasonably foreseen the plaintiffs' respective conduct. *Carter*, 837 N.E.2d at 521; *Bush*, 685 N.E.2d at 177–78; *Sell*, 597 N.E.2d at 332.

And in *Witmat*, this court expressly held that the defendant "owed no duty to [the plaintiff] because [the plaintiff] ... was not traveling the roadway with reasonable care." 907 N.E.2d at 175.

Unlike the facts in *Witmat, Carter, Bush,* and *Sell*, here there is no dispute that, at the time of the accident, Mandrell was traveling the roadway with reasonable care. Thus, none of those cases is instructive on how the law of negligence applies to this appeal. Rather, here, as in *Ousley* and *Cornelius*, Mandrell's vehicle was struck by a negligent third-party driver before it impacted Duke Energy's utility pole.

*Inherently Dangerous Location*

■ Duke Energy first asserts that summary judgment is appropriate because there was no evidence to suggest anything inherently dangerous in the location of the Pole. As evidence, Duke Energy notes the lack of a prior accident history both at the intersection in question and with the Pole. Duke Energy also cites Enz's affidavit, in which he states that accidents at four-way stop intersections are "usually of a minor nature." Appellant's App. at 330. And Duke Energy cites a Johnson County Highway Department survey that demonstrates that the majority of traffic on Graham Road travels south while the majority of traffic on Earlywood Drive travels east, suggesting that the southeastern location of the Pole is a less dangerous location than the southwestern corner of that intersection would have been. *See* Appellee's Brief at 19.

But Humphery's designated evidence creates a genuine issue of material fact on this question. The Pole was only 6.6 feet from the pavement of an uncurbed intersection. Robson, a professional engineer, testified that that location was within the curve radius of the intersection, that the

curve radius is an area with an increased potential for crashes, and that that area should be free of unyielding objects. Further, Enz testified that, while accidents at four-way stop intersections are "usually ... minor," crashes such as Mandrell's are foreseeable and, accordingly, utility poles should not be placed too near the intersection of roads. Appellant's App. at 330–31. In *Ousley* this court held, on nearly identical facts, that placing an unyielding object 6.5 feet from the intersection of two county roads was sufficient evidence to create a genuine question of material fact as to whether that location was inherently dangerous. 734 N.E.2d at 296. Thus, it is for a jury to determine whether it was reasonably foreseeable that a collision could occur at this intersection resulting in the type of harm suffered by Mandrell.

### Intervening Cause

■ Duke Energy also asserts that Albertson's acts constituted an intervening cause that relieved Duke Energy of any liability it may have otherwise had in the placement of the Pole. Specifically, Duke Energy notes that Mandrell's vehicle collided with the Pole only after Albertson, with marijuana in his system, disregarded the four-way stop sign and his vehicle struck Mandrell's vehicle. Thus, Duke Energy continues, it was Albertson's conduct and not Duke Energy's placement of the Pole "that set in motion the chain of circumstances that contributed to, or caused, Mandrell's death." Appellee's Brief at 10. And because Albertson's unlawful conduct was not an " 'ordinary and normal use of the highway,' " Duke Energy was " 'not required to anticipate and guard against the illegal or reckless conduct.' " *Id.* at 11 (quoting *Bush*, 685 N.E.2d at 178).

■ Duke Energy's argument misconstrues Indiana law. Again, there is no dispute here that Mandrell, the injured party, was traveling the roadway with reasonable care at the time of the accident. And Duke Energy cannot rely on the illegal or reckless conduct of a third party to defeat Humphery's action at the summary judgment stage in the litigation. *See Ousley*, 734 N.E.2d at 296; *Cornelius*, 637 N.E.2d at 199. Rather, "the fundamental test of proximate cause remains reasonable foreseeability where there is an independent intervening act." *Cornelius*, 637 N.E.2d at 202. Hence, the proper question at summary judgment is whether Duke Energy could have reasonably foreseen Mandrell's collision with its Pole, not whether Albertson's conduct was an ordinary and normal use of the highway. As we have stated:

> if the defendants were negligent in the placing of the pole or exposing the pole during the construction work because it was foreseeable that a collision in the intersection would occur causing a motorist to strike the pole, they were negligent because the pole created a hazard for a motorist leaving the traveled portion of the highway and striking the pole. That is exactly what occurred. Thus, whether the injury to Cornelius was within the zone of foreseeable risk created by the defendants, such that there was no intervening cause that created a different, unforeseeable zone of risk, is a question of fact for the jury.

*Id.* Likewise, in *Ousley* this court held that a question of material fact existed regarding the foreseeability of the risk of the plaintiff's collision with a fencepost 6.5 feet from an intersection even though the plaintiff's automobile was first struck by a third party. 734 N.E.2d at 296. Accordingly, here, we hold it is a question of fact for the jury whether Duke Energy could have reasonably foreseen that a motorist would collide with its Pole given its location.

## Conclusion

In granting summary judgment to Duke Energy, the trial court concluded, as a matter of law, that Duke Energy did not cause Mandrell's death. There is no question that Albertson's failure to yield at the four-way stop was the direct cause of the first of two collisions. But it was Mandrell's collision with the Pole, the secondary collision, that was the immediate cause of his death. A question of material fact exists as to whether the location of the Pole within the curve radius of the intersection was a reasonably foreseeable hazard. Thus, we cannot say, as a matter of law, that the location of the Pole was not a proximate cause of and did not contribute to Mandrell's death.

At oral argument, counsel for Duke Energy explained that since the parties had only recently stipulated to the dismissal of Albertson from this action, Duke Energy had not yet asserted a nonparty defense. Under Indiana's comparative fault scheme, a named defendant may assert a nonparty defense to attribute fault to a nonparty rather than to the defendant. *See* Ind. Code § 34–51–2–14; *Solnosky v. Goodwell,* 892 N.E.2d 174, 185 (Ind.Ct.App.2008) (quoting *Mendenhall v. Skinner & Broadbent Co.,* 728 N.E.2d 140, 142 (Ind.2000)). Under comparative fault, a jury might well find that either all or a substantial percentage of fault for the accident is attributable to Albertson, and it might attribute some or none of the fault to Duke Energy. But, again, those are jury questions, and we express no opinion on the ultimate resolution of those issues.

In sum, we hold that the trial court erred when it granted summary judgment to Duke Energy. It is for a jury, not a court, to determine whether Duke Energy could have reasonably foreseen a motorist's collision with the Pole. There is a genuine question of material fact as to whether the location of the Pole was inherently dangerous.

Reversed and remanded.

KIRSCH, J., and BARNES, J., concur.