**NORTHERN INDIANA PUBLIC SERVICE COMPANY, Appellant–Defendant Below,**

v.

**Bernard J. SELL, Crystal Sell, and Floyd Sell, Appellees–Plaintiffs Below.**

**No. 37A03–9201–CV–30.**

Court of Appeals of Indiana, Third District.

Aug. 10, 1992.

Paul A. Rake, Sherry L. Clarke, Lyle E. Hardman, Eichhorn, Eichhorn & Link, Hammond, for appellant.

Randolph A. Leerkamp, Kyle A. Jones, Carter & Leerkamp, Indianapolis, for appellees.

STATON, Judge.

Northern Indiana Public Service Co. (NIPSCO) brings an interlocutory appeal from the trial court's denial of NIPSCO's motion for summary judgment in a personal injury action brought by Bernard Sell and his parents, Floyd and Crystal Sell (the Sells). Bernard Sell was one of four passengers in a car driven by Richard Overdeer on U.S. Highway 24 when Overdeer fell asleep and lost control of his vehicle. The car crossed the center line and opposing lane of traffic, went down an embankment, and struck a NIPSCO utility pole. Overdeer and three of his passengers were killed, and Bernard Sell was seriously injured. NIPSCO makes three contentions in support of its claim that the trial court erroneously denied the motion for summary judgment. However, because we reverse, we need only address the following issue:

Whether NIPSCO owed a duty of reasonable care to the Sells in its placement of the utility pole.

Reversed.

On an appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. *Frost v. Phenix* (1989), Ind.App., 539 N.E.2d 45. We must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Shuamber v. Henderson* (1991), Ind., 579 N.E.2d 452, 454. Rational assertions of fact and reasonable inferences therefrom are deemed to be true, and any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Malachowski v. Bank One, Indianapolis* (1992), Ind., 590 N.E.2d 559, 562.

Thus, in order for NIPSCO to prevail on appeal, it must demonstrate that no factual dispute exists with respect to at least one element of negligence and that it is entitled to judgment as a matter of law. *See* Ind.Trial Rule 56(C). The elements of negligence are:

(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff, (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach.

*Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995, *reh'g denied.*

I.

*Compliance with Statute*

NIPSCO first contends that its sole duty to the Sells was to comply with the statute authorizing utilities to locate and maintain their poles along public highways. At the time of the accident, this statute provided in pertinent part:

Corporations now formed or which may hereafter be organized ... for the purpose of generating and distributing electricity for light, heat or power, are

authorized to set and maintain their poles ... upon, along, under, and across any of the public roads, highways and waters of this state outside of cities and incorporated towns and individuals owning ... lines for transmission of electricity are hereby given the same authority: Provided, That *the same shall be erected and maintained in such a manner as not to incommode the public in the use of such roads, highways and waters*[.]

IND.CODE 8–20–1–28 (1982) (emphasis added).

It is not disputed that NIPSCO applied for and received authorization to place the utility pole in its present location. However, the Sells contend that compliance with the statute and permit requirements does not relieve NIPSCO of its duty to exercise reasonable care. We agree with the Sells.

■ Where the unjustified or unexcused violation of a duty prescribed by statute may constitute negligence *per se, see French v. Bristol Myers Co.* (1991), Ind. App., 574 N.E.2d 940, *trans. denied,* it does not follow that compliance with a statute or ordinance constitutes the exercise of reasonable care. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on the Law of Torts* § 36, p. 233 (5th ed. 1984). "While compliance with a statutory standard is evidence of due care, it is not conclusive on the issue. Such standard is no more than a minimum, and it does not necessarily preclude a finding that the actor was negligent in failing to take additional precautions." *Id. See also Restatement (Second) of Torts* § 288C (1965).

■ This is especially so where, as was the case here, the statute spoke merely of the duty "not to incommode" the public in its use of the roads of this state. "Incommode" is "a limited word meaning to disturb or molest; to give inconvenience or trouble to; to put out." 20A *Words & Phrases* 306 (1959). We do not believe that a utility's duty of reasonable care (if one is found to exist) is discharged merely because its utility poles are not an inconvenience to the public. Indiana cases decided under IC 8–20–1–28 do not provide clear guidance on this issue. For instance, in *Copeland v. Public Service Co. of Indiana* (1952), 123 Ind.App. 345, 108 N.E.2d 273, *trans. denied* (1953), 232 Ind. 10, 111 N.E.2d 47, the plaintiff's automobile struck defendant's utility pole which had been placed on the shoulder of the highway awaiting installation. On appeal from the grant of defendant's demurrer to the complaint, the appellate court reversed, concluding that the complaint was sufficient to present a question of fact as to whether the utility violated the statute. The appellate court also concluded that the complaint stated a cause of action for common law negligence. In its opinion denying transfer, our supreme court agreed that the complaint stated a common law negligence claim, but determined that the averments were not sufficient to support the statutory action because the statute speaks of utility poles "erected and maintained." The utility poles in *Copeland* had not been erected and maintained, but were placed two to three feet from the pavement awaiting installation.

The utility poles in this case have indeed been "erected and maintained" as contemplated by former IC 8–20–1–28. The undisputed evidence reveals that the pole in question is located some seventeen feet from the north pavement edge of U.S. Highway 24, and nearly thirty feet from the highway center line (the vehicle in which Bernard Sell was traveling was in the south lane, eastbound). The center of the pole is one foot, six inches from the northern edge of the U.S. Highway 24 right-of-way, in accordance with a state permit (looking at it another way, the northernmost edge of the pole is approximately seven inches away from private property bordering the highway right-of-way). Remaining utility poles in this (straight) stretch of highway are similarly positioned. From this set of undisputed facts, we agree with NIPSCO that its placement of the poles in this manner did not incommode the public in the use of the highway. However, in accordance with our reasoning above, we conclude that NIPSCO's compliance with the statute is not

dispositive as to whether it had a common law duty to exercise reasonable care. Such compliance is, however, evidence on the issue of whether any breach of the duty occurred.

## II.

### *Existence of Duty*

 In *Webb, supra,* our supreme court articulated three factors that must be considered by a court when determining whether to impose a duty at common law. These factors are:

(1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns.

575 N.E.2d at 995. We examine each of these factors in turn.

### A. Relationship Between the Parties.

 It is within the province of the trial court to determine whether a relationship gives rise to a duty, although factual questions interwoven with this determination are resolved by the fact-finder. *Harper v. Guarantee Auto Stores* (1989), Ind. App., 533 N.E.2d 1258, 1261–62, *trans. denied; Webb, supra,* at 995. There is no contractual or professional relationship between the parties. However, as stated above, NIPSCO has the statutory right to locate its utility poles along state roads so long as the placement of the poles does not "incommode" the public in the use of such roads. IC 8–20–1–28. Thus, there is somewhat of a statutory relationship between NIPSCO and Bernard Sell, a member of the public using U.S. Highway 24. Nonetheless, we believe that this relationship is limited to those members of the public using state highways as they were intended to be used. Once the car in which Bernard Sell was a passenger crossed the center line and opposing lane of traffic, the use was no longer legitimate. *See* IC 9–21–8–2 (vehicles required to be driven on the right half of the roadway). NIPSCO's positioning of the utility pole in this case was not related to the proper use of U.S. Highway 24. The undisputed facts demonstrate that NIPSCO had no relationship with the Sells that would give rise to a duty in this case.

### B. Foreseeability.

The risk reasonably to be perceived defines the duty to be obeyed.

Thus spoke Justice Cardozo in *Palsgraf v. Long Island R. Co.* (1928), 248 N.Y. 339, 344, 162 N.E. 99, 100, explaining that a duty to exercise reasonable care is owed only to those who might reasonably be foreseen as being subject to injury by a breach of the duty. *See also Webb, supra,* at 997; *Thiele v. Faygo Beverage, Inc.* (1986), Ind.App., 489 N.E.2d 562, 574, *trans. denied.* Our responsibility in this regard is to "examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct." *Webb, supra,* at 997 (citing 3 F. Harper, F. James & O. Gray, *The Law of Torts* § 18.2 (2d ed. 1986)).

 In locating and installing the utility pole NIPSCO was required to anticipate the ordinary and usual use of the highway. *See Hellman v. Julius Kolesar, Inc.* (1987), Minn.App., 399 N.W.2d 654 (utility not required to foresee extraordinary circumstances of plaintiff being forced off of road and into utility pole, where pole was in line with signs and other fixtures, and was not the cause of any other known vehicle damage since it was installed). NIPSCO was not required to anticipate that Overdeer would fall asleep, thereby losing control of his vehicle, enabling it to cross the center line and opposing lane of traffic, proceed another thirteen feet down an embankment, striking the pole. There is no allegation that this pole, located very nearly on the border of the state's right-of-way, is out of alignment in comparison to a number of poles along this same straight portion of U.S. Highway 24. Nor is there any evidence that this particular pole is any more hazardous than the other utility poles along this portion of the highway, or that it has been the scene of even a single prior accident.

The Sells cite a number of cases for the proposition that a utility company can owe a duty to persons injured outside the traveled portion of the roadway. While we have no quarrel with these holdings, the cases are factually distinguishable. For instance, in *Lafayette Telephone Co. v. Cunningham* (1916), 63 Ind.App. 136, 114 N.E. 227, the appellate court affirmed the judgment for a Lafayette police officer who, late one evening, attempted to cross a street in response to a call from a fellow officer. In doing so, however, the plaintiff tripped on a guy wire that ran from a utility pole to a stake located between the sidewalk and the street. Despite the fact that the plaintiff attempted to cross where there was no crosswalk, the court held that the stake was located in

> a part of the street, which the pedestrian may use for travel, and any authority or license to use such part of the street for the other purposes indicated must be exercised with reference to the possible uses thereof by such pedestrians; and, such licensee must anticipate such possible use by the pedestrian[.]

*Id.* at 145, 114 N.E. at 230. Thus, the court concluded that the plaintiff's attempt to cross the street at that location was reasonably foreseeable.

In *McMillan v. Michigan State Highway Commission* (1986), 426 Mich. 46, 393 N.W.2d 332, the Michigan Supreme Court reversed the grant of summary judgment in favor of a utility, holding that there was no overriding policy that would insulate a defendant in *all* cases in which a utility pole was placed outside the traveled portion of the highway. We agree with this statement, but note that the utility pole in *McMillan* was located in the median, only three feet away from the traveled portion of the road. The court remanded with instructions for the trial court to consider evidence pertaining to the location of the pole, its proximity to the roadway, the configuration of the roadway, whether the utility company had notice of previous accidents at that location and whether as an alternative, a less dangerous location for

the pole existed. *Id.* at 64, 393 N.W.2d at 340. The court did not foreclose the possibility that summary judgment would be appropriate if consideration of these factors did not reveal genuine issues of material fact for a jury.

The Louisiana Court of Appeals reached a similar result in an appeal from the grant of summary judgment. *Vigreaux v. Louisiana Dep't of Transportation & Development* (1989), La.App., 535 So.2d 518. There, the court concluded that a prior case affirming a judgment for a utility company under similar circumstances did not stand for the proposition that a utility company, as a matter of law, will *never* be held liable for injuries caused a motorist whose vehicle leaves the primary roadway. Relying on factors identical to those articulated in the *McMillan* case, the court in *Vigreaux* observed that the utility pole was a mere eight inches from the street, and was located immediately following a "sharp 90 degree curve in the roadway." 535 So.2d at 519. The court further noted that the plaintiff produced affidavits supporting the claim that the utility company had notice of prior accidents at that location, and that the utility was aware of an alternative, less dangerous location for its pole.

Had the Sells been able to produce similar evidence in this case, summary judgment would have been inappropriate. The undisputed evidence, however, indicates that the pole was more than thirteen feet from the edge of the highway berm. In the vicinity of the accident the highway has no difficult curves to be negotiated by a motorist. The Sells produced no evidence of prior accidents at that location, but they do make much of the fact that the pole is located at the bottom of a ditch. Even so, they do not demonstrate how placement of the pole in this manner relates to the foreseeability of the risk involved. Relocating the utility pole seven inches further from the road (the remaining distance that is still included in the highway right-of-way), or several feet east or west would not make

the pole any less dangerous, or the concomitant injury any more foreseeable.[1]

Although in some cases it would be reasonably foreseeable that motorists (or their occupants) would leave the traveled portion of a road and strike a utility pole, there are no facts in the present case susceptible of that inference. Therefore, the factor of foreseeability also militates against imposing a duty on NIPSCO.

### C. Concerns of Public Policy.

Public policy considerations also weigh heavily against finding a duty in this case. Under state law, NIPSCO has the qualified right to locate its utility poles along the highways of this state. IC 8–20–1–28. Indiana has long recognized the substantial public interest that is served by the grant and exercise of this right. *See, e.g., Delaware & Madison Counties Telephone Co. v. Fleming* (1913), 53 Ind.App. 555, 102 N.E. 163. The Sells do not contend that NIPSCO was negligent for exercising its right, nor do they specify in what portion of the highway right-of-way NIPSCO could have placed the pole without being negligent. As mentioned above, NIPSCO could not have relocated the pole in question more than seven inches further from the highway without the pole being at least partially on private property.

To hold NIPSCO to a duty in this situation would be to impose absolute liability upon utilities for such accidents, for there are undoubtedly thousands of poles similarly installed in this state. We are not prepared to say that a utility is the insurer of all persons injured by utility poles that otherwise pose no unreasonable risk of harm.

### Conclusion

We emphasize that this opinion should not be construed as insulating a utility from liability in every case where injuries occur when a vehicle leaves the traveled portion of the road and strikes a utility pole. However, the undisputed facts in this case do not demonstrate the existence of a relationship between the parties giving rise to a duty. Moreover, the accident in this case was not reasonably foreseeable as a matter of law. Finally, public policy concerns weigh heavily against imposing a duty in this case.

Finding no issues of material fact in dispute, we conclude that NIPSCO was entitled to summary judgment as a matter of law.

GARRARD and MILLER, JJ., concur.

---

1. For a comparison of cases dealing with this precise issue, *see* Annot., 51 ALR4th 602 (1987 & Supp.1991).