INDIANA STATE POLICE,
Appellant–Defendant,

v.

DON'S GUNS & GALLERIES,
Appellee–Plaintiff.

No. 49A04–9602–CV–54.

Court of Appeals of Indiana.

Dec. 3, 1996.

Transfer Denied May 9, 1997.

Pamela Carter, Attorney General, Meredith J. Mann, Lisa Paunicka, Deputy Attorneys General, Indianapolis, for Appellant-Defendant.

Richard L. Brown, Jr., Robert V. Clutter, Brown Hastings & Clutter, Indianapolis, for Appellee-Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The Indiana State Police (ISP) appeals the trial court's denial of its motion for summary judgment in the action filed by Don's Guns & Galleries, Inc. (Don's Guns) against ISP.

We reverse.

## FACTS

The following facts are revealed by the designated evidentiary material before the trial court.[1] On October 26, 1986, a .38 caliber Smith & Wesson handgun bearing the serial number AAV6907 and crane number 75470[2] was stolen from Joellyn Lawrence. Lawrence reported the theft to the Marion County Sheriff's Department (MCSD). MCSD entered information on the stolen handgun into a computer database used by law enforcement for information on stolen handguns. The crane number was mistakenly entered in the database position for recording a serial number; only in the position for "miscellaneous" information did the serial number appear. (R. 435).

On November 24, 1989, Don's Guns sold Kevin Johnson a .38 caliber Smith & Wesson handgun, serial number AAV6907 and crane number 75470. At that time, Don's Guns forwarded a "Report of Handgun Sale" to MCSD, indicating Johnson was purchasing the gun and providing "[b]oth the Crane Number and the Serial Number" of the handgun. (R. 457).

On February 10, 1990, ISP Trooper Richard Brown stopped Johnson for speeding. When he "noticed a revolver under the driver's arm rest," Brown proceeded to conduct "a background check" on the gun and read "what [he] thought was the serial number of the weapon" to the dispatcher. (R. 432). The number Brown read to the dispatcher was the gun's crane number. Brown was told "that the gun had been reported stolen." *Id.* Brown confiscated the gun. Johnson "cooperated fully" with ISP and was released. *Id.* Investigation by ISP determined that the "number which had been

entered" into the computer database by MCSD was "not the true serial number of the gun." (R. 435). When ISP obtained the complete computer file on the number reported by Brown, it discovered the error in how the stolen gun information had been entered in the computer database. ISP further obtained the MCSD report of the theft, contacted Joellyn Lawrence, and confirmed that the serial number of the gun stolen from her "matched the serial number of the weapon confiscated from Mr. Johnson." (R. 435).

In October of 1991, Johnson brought an action against Don's Guns on various grounds, including intentional infliction of emotional distress and misrepresentation. On March 3, 1993, Don's Guns filed a third-party complaint against MCSD and ISP. According to the complaint, Trooper Brown "erroneously established" by virtue of a "clearly erroneous inquiry" that Johnson's handgun was stolen, and "his act of confiscating the handgun" resulted in Don's Guns being involved in litigation, for which costs Don's Guns sought indemnification from ISP. (R. 28). The complaint further alleged ISP "was wrongfully holding" the handgun and should "be ordered to return the subject handgun to Don's Guns." *Id.* In a count against MCSD, the complaint alleged MCSD had "reported" to Don's Guns that the "handgun had not been stolen" and "authorized Don's Guns to complete" the sale to Johnson, thereby damaging Don's Guns.

On September 26, 1995, the court found that after having previously granted summary judgment to Don's Guns, "no pending issues between" Johnson and Don's Guns existed. (R. 414). That same day ISP moved for summary judgment on Don's Guns' complaint, contending there was "no

---

**1.** While the standard of review in ISP's brief recognizes that the appellate court "considers only those portions of the record that have been properly designated and considers this evidence," ISP's Brief at 5, not one fact in its recitation of facts is derived from the record before the trial court upon the motion for summary judgment. Such is also the case for the vast majority of facts referenced by Don's Guns. Both parties direct us to facts elicited at trial. However, ISP's appeal on the issue of its motion for summary judgment having been improperly denied requires that our attention be focused solely upon the evidence before the trial court at

the time the court considered that motion. *See, Seufert v. RWB Medical,* 649 N.E.2d 1070 (Ind.Ct.App.1995)(Reviewing a summary judgment motion, "neither the trial court nor the reviewing court can look beyond the evidence specifically designated to the trial court.").

**2.** No designated evidence explains exactly what a crane number is. However, from the fact pattern and the appearance of this other number on various documents regarding the handgun, the crane number must be at least equally visible upon examination of the gun.

material issue of fact" and that ISP was "entitled to judgment as a matter of law." (R. 417). ISP designated affidavits provided to the court from Trooper Brown, an ISP officer in its Criminal Justice Data Division, and the District Investigative Coordinator who unraveled the history of the handgun and its theft report. ISP's memorandum in support of its motion argued that (1) ISP was immune from the claim of Don's Guns pursuant to the immunity provisions of the Indiana Tort Claims Act, and (2) an essential element of negligence was lacking in that ISP did not owe a private duty to Don's Guns under the test adopted in *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278 (Ind.1994). Don's Guns opposed ISP's motion, arguing that (1) ISP was not entitled to immunity under the Tort Claims Act, (2) ISP indeed owed a private duty to Don's Guns under the *Mullin, supra,* test, and (3) ISP was "liable for violating I.C. 35–47–3–2 by failing to forward the confiscated gun" to MCSD. (R. 449). By minute entry dated October 13, 1995, the trial court denied ISP's motion for summary judgment.

### DECISION

■ On appeal from the denial of a motion for summary judgment, we apply the same standard applicable in the trial court. *Northern Indiana Public Service Co. v. Sell,* 597 N.E.2d 329, 330 (Ind.Ct.App.1992), *trans. denied.* Specifically, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Id.* (citing *Shuamber v. Henderson,* 579 N.E.2d 452, 454 (Ind. 1991).

■ The denial of summary judgment necessarily implies the trial court's determination that ISP could be held liable under the provisions of the Indiana Tort Claims Act and that ISP owed a duty to Don's Guns. ISP asserts both its immunity and the absence of a private duty owed by ISP to Don's Guns. Don's Guns again argues that immunity is inapplicable here and, further, a private duty is owed.

3. This is the only contention by Don's Guns in response to the immunity claim of ISP. No such argument is put forth as to the application of

■ Even if Don's Guns were to prevail in its argument that the immunity shield of the Indiana Tort Claims Act does not cover Trooper Brown's having called in the crane number instead of the serial number on Johnson's handgun,[3] the absence of immunity does not necessarily result in a legally cognizable claim of negligence. *Mullin v. Municipal City of South Bend,* 639 N.E.2d 278, 283 (Ind.1994). In order to succeed in a negligence action, the plaintiff must establish:

(1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to that standard; and (3) an injury proximately caused by the breach of duty.

*Id.* at 283. The existence of a duty is a question of law for the court. *Id.* The court balances three factors in determining whether a duty exists: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Id.* (citing *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991)). However, a plaintiff seeking to recover against a governmental entity for negligence must show more than a duty owed "to the public as a whole." *Greathouse v. Armstrong,* 616 N.E.2d 364, 368 (Ind.1993). The plaintiff must show a relationship between the parties which gives rise to a private duty owed to the particular plaintiff. *Id.* The test to determine when such a private duty exists contains three elements:

(1) an explicit assurance by the [governmental entity], through promises or actions, that it would act on behalf of the injured party;

(2) knowledge on the part of the [governmental entity] that inaction could lead to harm; and

(3) justifiable and detrimental reliance by the injured party on the municipality's affirmative undertaking.

immunity to Don's Guns' assertion concerning return of the gun.

*Mullin* at 284. Thus, the test "takes into account each of the three facts *Webb* requires that we balance," because

> [n]ot only must the harm to the injured party be foreseeable, the relationship between the governmental entity and the injured person must be such that the governmental entity has induced the injured person justifiably to rely on its taking action for the benefit of that particular person to his detriment.

*Id.*

Don's Guns' legal theory of Trooper Brown's negligence, resulting in a liability to Don's Guns, essentially derives from its contention that had Brown called in the serial number on the gun, the response would not have been that the gun had been reported stolen; then the gun would not have been confiscated and Johnson would not have sued Don's Guns. However, the reasoning supporting this argument cannot withstand the analysis necessary to find that Trooper Brown, as an agent of ISP, owed a duty to Don's Guns to accurately report the serial number on Johnson's gun. No designated evidentiary material shows there to have been any special relationship between ISP and Don's Guns. Thus, any duty by ISP to properly report the serial number from a weapon undergoing a background check is owed to the public as a whole.

■ In its memorandum opposing summary judgment, Don's Guns claims ISP owed it "an affirmative duty" of protection because Don's Guns had complied with the statutory requirement to forward the Record of Handgun Sale to both ISP and MCSD. Neither this claim nor the allegations it contains were asserted in its complaint against ISP. Moreover, nowhere in the designated material is there any evidence that Don's Guns submitted the required report to ISP. Finally, our analysis of the Handguns chapter of Article 47, Regulation of Weapons, reveals no express legislative mandate that the ISP and local law enforcement (to whom the report must be submitted) search their records to determine whether the subject weapon has been reported stolen and, if so, to notify the seller that the sale cannot be consummated.[4]

■ As indicated in FACTS, the last basis on which Don's Guns sought relief was the failure of ISP to return the stolen handgun to MCSD. In its memorandum opposing summary judgment, Don's Guns contends this violates I.C. 35–47–3–2(b) because "if a law enforcement agency is unable to return a confiscated weapon to the rightful owner, the firearm is to be delivered at once to the sheriff's department of the county in which the offense occurred." (R. 449). First, we agree with the State that ISP owes no private duty to Don's Guns to deliver the handgun to MCSD. Further, Don's Guns' own complaint states that the handgun at issue here was reported stolen on October 26, 1986 "by the rightful owner." (R. 460). No evidentiary material indicates that ISP was unable to return the handgun to Joellyn Lawrence. Finally, we question the standing of Don's Guns to litigate whether ISP should

---

4. As noted by the State, I.C. 35–47–2–10 requires the records of the respective entities be searched "concerning the transferee." Don's Guns asks the various provisions of the Handguns chapter be read together to impose a duty on law enforcement to check the number of the weapon against theft reports and further suggests the failure to so hold would facilitate the transfer of stolen handguns. Not only does the section quoted not require the gun-specific check and notification Don's Guns would find implied, but other provisions of the Handguns chapter impose a seven day waiting period before delivery of any gun to a transferee not holding a handgun-carrying license. Thus, if Mr. Johnson had a license, he could have exited Don's Guns with the handgun. If he did not have a license, he would not have the weapon for at least seven days. Therefore, the "protection" Don's Guns claims it is afforded by statute would not apply if the transferee had a license. As we indicated in *Rubin v. Johnson*, 550 N.E.2d 324, 329 (Ind.Ct.App.1990), the "statutes regulating the transfer and possession of handguns were enacted by the legislature to protect the public from those who would use such weapons in a dangerous or irresponsible manner." The focus of those statutory provisions is on disallowing the ownership of handguns by certain individuals.

However, we do not find the predicate facts and pleadings before us warrant deciding, as a matter of law, the question of whether law enforcement is statutorily required to determine whether a weapon proposed for transfer is stolen and to so notify the transferor if it is, nor the question of whether such would constitute a private duty owed by law enforcement to the transferor.

deliver the gun to MCSD. Our supreme court has stated that "[s]tanding refers to the question of whether a party has an actual demonstrable injury for purposes of a lawsuit," and cites the following elaboration "on the concept of standing:

> In order to invoke a court's jurisdiction, a plaintiff must demonstrate à personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue."

*Hammes v. Brumley,* 659 N.E.2d 1021, 1029–30 (Ind.1995)(quoting *Higgins v. Hale,* 476 N.E.2d 95, 101 (Ind.1985)). We discern no showing of such a personal stake of Don's Guns in the outcome of a lawsuit seeking to direct ISP to deliver the gun to MCSD.

On appeal, Don's Guns argues summary judgment was proper because ISP "failed to show that there were no genuine issues as to any material fact when they failed to show that the weapon at issue was the one stolen from Lawrence." Don's Guns' Brief at 7. We fail to understand how proof that the handgun it sold to Johnson was the one stolen from Lawrence is a material fact with respect to determining as a matter of law whether ISP owed Don's Guns a private duty.[5]

Don's Guns also argues that the ISP owed it a "statutory duty" by virtue of the statutory provision requiring submission by a gun transferror of a report of handgun sale to ISP.[6] This argument is also asserted for its contention that ISP was required by statute to turn the gun over to MCSD. However, its rhetorical arguments thereon fail to define how such a duty may be found to have been created by statute, *see, Carroll v. Jobe,* 638 N.E.2d 467, 469 (Ind.Ct.App.1994), *trans. denied* (if the statute is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a

result of its violation), or to apply that analysis. Accordingly, this argument is waived. *See,* Ind. Appellate Rule 8.3(A)(7).

After consideration of the complaint filed by Don's Guns and the designated factual material before the court, ISP's motion for summary judgment should have been granted because as a matter of law ISP owed Don's Guns no private duty with respect to the ISP actions alleged by Don's Guns to have been negligent.

We reverse.

RUCKER, J., concurs.

CHEZEM, J., concurs in result.

---

**5.** A separate one sentence argument posits, "Even if the ISP met their burden as the movant the Trial Court's denial should be affirmed if Don's Guns' response set forth specific facts showing a genuine issue for trial." Don's Guns' Brief at 14. Lacking any reference to its response to support this contention, it is waived. *See,* Ind. Appellate Rule 8.3(a)(7).

**6.** Again, we note no evidence that such a report was submitted to ISP was before the trial court.