Melissa OUSLEY, Administratrix of the Estate of Daniel J. Ousley, Melissa Ousley, in her own behalf, and Amanda Ousley and Ashley Ousley, Minors, By their next friend and natural parent, Melissa Ousley, Appellants–Plaintiffs,

v.

BOARD OF COMMISSIONERS OF FULTON COUNTY and Donald Craig, Appellees–Defendants.

No. 25A03–9910–CV–380.

Court of Appeals of Indiana.

Aug. 31, 2000.

Jim Brugh, Logansport, Indiana, Attorney for Appellants.

Robert T. Keen, Stephen J. Harants, Miller Carson Boxberger & Murphy, Fort Wayne, Indiana, Attorneys for Appellee Board of Commissioners of Fulton County.

James H. Austen, Starr Austen Tribbett & Myers, Logansport, Indiana, Attorney for Appellee Donald Craig.

## OPINION

SULLIVAN, Judge

Appellants, Melissa Ousley, as administratrix of her husband, Dan Ousley's estate, and in her own behalf and as next friend to their children, Amanda Ousley and Ashley Ousley, (Ousley) appeals the trial court's grant of summary judgment in favor of the Board of Commissioners of Fulton County (Fulton County) and Donald Craig (Craig).

We reverse and remand.

This case arose as a result of an automobile accident which claimed the life of Ousley's husband, Dan. On October 7, 1994, Dan was driving his automobile east on Fulton County Road 500 North when George Wagner (Wagner), who was driving his truck south on Fulton County Road 825 East, struck Dan's automobile at the intersection of the two roads. Wagner did not yield to Dan's automobile at the stop sign located at the intersection of 825 East and 500 North. When Wagner's truck struck Dan's automobile, the truck pushed the automobile into a steel railroad post serving as a corner fencepost, located six and one-half feet from the edge of 500 North. Dan died as a result of his injuries in the accident, and Amanda and Ashley, who were passengers, also sustained injuries.

On October 7, 1996, Ousley filed a complaint alleging wrongful death against Fulton County and Craig, the landowner whose property was adjacent to the intersection and whose fencepost was struck. In the complaint, Ousley alleged that the corner fencepost was erected within the right-of-way of 500 North, and that Fulton County had a duty to maintain the highways and remove any obstructions including this post. Further, Ousley contended that Craig had a duty to remove the dangerous condition posed by the fencepost to travelers along the adjacent roads.

On December 11, 1998, Fulton County filed a Motion for Summary Judgment. Fulton County asserted that the fencepost was not located within the right-of-way, and therefore, it had no duty to remove the fencepost or warn motorists about it. Specifically, Fulton County disputed the accuracy of an Indiana Department of Transportation (INDOT) measurement of 500 North placing the fencepost within the right-of-way. The county insisted that this measurement was only an estimate, and instead relied upon the statutory provisions for right-of-way widths and upon case law which would place the fencepost on Craig's property.

On December 23, 1998, Craig also moved for summary judgment. Craig contended that landowners should not owe a duty to motorists when motorists leave the paved portion of a clear and straight intersection where there is no history of other accidents. Craig also asserted that he had no duty to motorists to construct the fencepost in a different manner. Craig contended the fencepost was constructed of materials similar to those used by other farmers in the area.

On August 18, 1999, after a hearing, the trial court entered summary judgment for Fulton County and Craig. The trial court concluded that the intersection of 500 North and 825 East has remained essentially unchanged for at least forty years and probably since the turn of the century. The court assumed for purposes of Fulton County's summary judgment motion that the fencepost was within the right-of-way, but nevertheless concluded that the county did not owe a duty to remove "bordering items" such as trees or fenceposts "where the right-of-way is visibly bordered and nothing hazardous about that border is apparent." Record at 161.

The trial court then assumed for purposes of Craig's summary judgment motion that the fencepost was upon Craig's property and not within the right of way. The court noted that the intersection had a low amount of traffic, the fencepost had never contributed to an accident, the intersection was flat and straight, and nothing about the intersection was unreasonably dangerous. The court concluded it was not foreseeable to Craig that motorists would leave the paved portion of the road and strike the fencepost. The court also found that Craig did not have a duty to construct the post differently, as this type of corner post is commonly used, and Craig, as a farmer, had a statutory duty to have a fence around his property.

Upon appeal, Ousley contends that Fulton County had a duty to remove the fencepost from the intersection because it was obstructing the right-of-way and that Craig had a duty of reasonable care in the placement and design of the fencepost.

■ When reviewing a trial court's entry of summary judgment, we stand in the shoes of the trial court. *Kantz v. Elkhart County Highway Dept.* (1998) Ind. App., 701 N.E.2d 608, 610, *trans. denied.* Summary judgment may be granted only where there are no genuine issues of material fact. *Id.* Summary judgment is rarely appropriate in negligence cases because "[i]ssues of negligence, contributory negligence, causation and reasonable care are more appropriately left for the determination by a trier of fact." *Indiana Limestone Co. v. Staggs* (1996) Ind.App., 672 N.E.2d 1377, 1380, *trans. denied.* Ousley's claim is based upon a theory of negligence. To recover upon a negligence claim, a plaintiff must prove that the defendant owed the plaintiff a duty of care which the defendant breached proximately causing injury. *Goldsberry v. Grubbs* (1996) Ind. App., 672 N.E.2d 475, 477, *trans. denied.*

■ Ousley's challenge to the trial court's entry of summary judgment focuses upon whether Fulton County and/or Craig had a duty to remove the fencepost from the intersection or to design it differently. Our Supreme Court has identified three factors to balance in determining whether a duty should be imposed. *Webb v. Jarvis* (1991) Ind., 575 N.E.2d 992, 995, *reh'g denied.* The three factors to consider are (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Id.* While the determination of whether these factors give rise to a duty is generally a matter for the court to decide, "factual questions may be interwoven with the determination of the existence of a relationship and the foreseeability of harm, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder." *State v. Cornelius* (1994) Ind.App., 637 N.E.2d 195, 198, *trans. denied; Staggs, supra,* 672 N.E.2d at 1380–81.

■ In the context of tortious negligence, the nature of the duty is never-changing. It is the duty to exercise reasonable care under the circumstances. While the conduct necessary to measure up to that duty may vary depending upon the circumstances of each case, the nature of the duty remains the same. *South Eastern Indiana Natural Gas Co., Inc. v. Ingram* (1993) Ind.App., 617 N.E.2d 943; *Walters v. Kellam & Foley* (1977) Ind. App., 172 Ind.App. 207, 360 N.E.2d 199. Stated conversely, the failure to exercise reasonable care under the circumstances constitutes negligence. If that negligence is a proximate cause of injury, liability attaches to the negligent party.

■ Nevertheless, in each case a threshold determination must be made with regard to whether or not the defendant in that case owes a duty to the particular plaintiff. By way of illustration, in operating his motor vehicle upon Interstate 465 in Marion County, driver A does not owe any duty to a farmer in Kansas, who at that moment is seeding his wheat field. On the other hand, if that farmer is traveling from Kansas to Ohio and at the

time in question is traversing Interstate 465 in Marion County, driver A owes that farmer, along with others using the highway, the duty to exercise reasonable care. It is with regard to this threshold analysis that the factors set forth in *Webb, supra,* 575 N.E.2d 992 are brought into play.

The three-factor test enunciated in *Webb* was early criticized by a scholarly law journal article. *Tidmarsh, Tort Law: The Languages of Duty,* 25 Ind.L.Rev. 1419 at 1424 et seq. (1992). In the intervening years since that article, however, the *Webb* test has become firmly entrenched in the case law of Indiana. To the three factors specifically set forth in *Webb,* a fourth or alternative approach to the determination of duty may be represented by cases such as *Cowe v. Forum Group, Inc.* (1991) Ind., 575 N.E.2d 630, and *Goldsberry v. Grubbs* (1996) Ind.App., 672 N.E.2d 475, both of which draw upon *Gariup Contruction Co., Inc. v. Foster* (1988) Ind., 519 N.E.2d 1224.

In *Gariup,* the court, in turn drawing upon Professors Prosser and Keeton, observed:

"We note the following observations from *Prosser & Keeton on Tort*s § 53, at 357–59 (5 th ed. 1984):

* * * The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. * * * But it should be recognized that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

\* \* \* \* \* \*

Various factors undoubtedly have been given conscious or unconscious weight, including convenience of ad- ministration, capacity of the parties to bear the loss, a policy of preventing future injuries, the moral blame attached to the wrongdoer, and many others. Changing social conditions lead constantly to the recognition of new duties. No better general statement can be made than that the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists."

519 N.E.2d at 1227.

When balancing the factors delineated in *Webb,* our attention is drawn to the foreseeability component of duty. From the time that the Supreme Court established the three-factor test for determining the existence of a duty, we have applied the test differently to factual situations similar to the case before us. For example, in *Northern Indiana Public Service Co. v. Sell* (1992) Ind.App., 597 N.E.2d 329, 334, *trans. denied,* a motorist fell asleep and struck a utility pole and his passenger sued the utility company. This court held that "[a]lthough in some cases it would be reasonably foreseeable that motorists (or their occupants) would leave the traveled portion of a road and strike a utility pole," the facts in this case do not support that inference. *Cf. Kantz, supra,* 701 N.E.2d at 614 (holding that it was foreseeable that a vehicle would leave the road and hit a tree stump where the county had received notice of the dangerous tree, removed it, but failed to remove the tree stump, even though the court was reluctant to place a general duty upon landowners to remove trees and stumps).

Another case, *Goldsberry, supra,* 672 N.E.2d at 477–80, noted that the inconsistent applications of the *Webb* test have been caused, in part, by the confusion between the foreseeability component of the duty element of negligence and the foreseeability component of the proximate cause element. *Goldsberry* held that the foreseeability component of duty is a more general inquiry without a detailed analysis of the particular facts of the case. *Id.* at

479. *Goldsberry* held that, regardless of the facts, it is foreseeable that motorists will leave the traveled portion of a road and strike utility poles set and maintained along that road. *Id.* at 480.

On other occasions, we have been unable to conclude whether a duty exists because material issues of fact hampered our balancing of the factors involved. We held in *Cornelius, supra,* 637 N.E.2d at 199, that it was the function of the jury to determine whether it was foreseeable that a motorcyclist would hit a utility pole located one to two feet from the shoulder of the highway after colliding with an automobile. Similarly, in *Staggs, supra,* 672 N.E.2d at 1383–84, where an automobile left an icy road and sank into a quarry, a panel of this court could not conclude as a matter of law that it was unforeseeable that a motorist would deviate from normal incidents of travel.

■ In the instant case, the trial court held that Fulton County did not owe a duty to remove the fencepost from the right-of-way. However, the trial court did not specifically conclude whether the fencepost was in the right-of-way in its analysis of whether it was foreseeable that vehicles would leave the paved portion of the road and strike a fencepost. Instead, it assumed that the post was in the right-of-way when considering Fulton County's summary judgment motion and assumed the post was on Craig's property when considering Craig's motion.

Fulton County 500 North is 19 feet wide, and the fencepost is located six and one-half feet from the edge of the pavement or sixteen feet from the centerline of 500 North. Therefore, the width of the right-of-way must be a minimum of thirty-two feet for the fencepost to be within the right-of-way. Ousley relies upon an INDOT inventory which measured the right-of-way at thirty-four feet to conclude that the post was within the right-of-way. INDOT measures Indiana highways and reports the mileage to the State Auditor's Office to determine how funds from the highway motor vehicle account will be distributed. INDOT considers measurements taken during the inventories to be estimates and cautions that these measurements should not be used as a final source for information.

Fulton County, on the other hand, relies upon statutes and case law to assert that the fencepost was not within the right-of-way. The county notes that rights-of-way are established either by county ordinance or by use. Indiana Code 8–20–1–15 (Burns Code Ed. Repl.1991 & Supp.2000) provides that "[a] county highway right-of-way may not be laid out that is less than twenty (20) feet on each side of the centerline...." If this statute controls, then the post would conclusively be within the forty foot wide right-of-way. However, this particular version of the statute was not in effect at the time 500 North was created, sometime around 1899. Fulton County cites *Evans v. Bowman* (1915) 183 Ind. 264, 108 N.E. 956 which discussed a previous version of this statute requiring that county highways be at least thirty feet wide. Further, the county relies upon cases which hold that when rights-of-way are not established by county ordinance, then the rights-of-way established instead by use extend only to the paved portion of the highway. *See Contel of Indiana v. Coulson* (1995) Ind.App., 659 N.E.2d 224, *trans. denied; Elder v. Bd. of County Comm'rs of Clark County* (1986) Ind.App., 490 N.E.2d 362, *trans. denied.* However, we are unable to declare with any degree of conviction that these cases and statutes completely invalidate the INDOT measurement.

Given that none of these measurements appears to be entirely reliable, we understand the trial court's alternative treatment of the placement of the fencepost in its summary judgment rulings. The trial court was attempting to reach a fair result without necessarily deciding the position of the fencepost. However, from the totality of the evidence, it is unclear whether the fencepost is located in the right-of-way.

The trier of fact's conclusions vis-a-vis the respective defendants necessarily depends upon where the fencepost is located.

Because there is a material issue of fact as to whether the fencepost is located within the right-of-way, we cannot determine whether it was foreseeable to Fulton County that motorists would leave the intersection and hit the fencepost located six and one-half feet from the edge of the pavement. Thus, we are unable to conclude as a matter of law that it is not foreseeable to the county that vehicles would strike the post.

 With respect to Craig, we also cannot conclude that as a matter of law it was not foreseeable that motorists would leave the pavement and strike his corner fencepost. Ousley asserts that section 368 of the RESTATEMENT (SECOND) OF TORTS (1965) supports that it was foreseeable to Craig that her husband's automobile would hit Craig's fencepost. Section 368 provides that a landowner who places artificial conditions so near to a highway that he realizes or should realize that the condition creates an unreasonable risk may be liable for the harm caused by that condition.

However, before assessing whether the fencepost was dangerously designed, we would have to conclude that as a matter of law, it was foreseeable to Craig that vehicles would leave the intersection and hit his fencepost located six and one-half feet from the highway. Here, the evidence indicates that nothing about the intersection made it particularly dangerous. There is no history of accidents occurring at this intersection. However, the fencepost is located only six and one-half feet from the pavement. From this evidence, we cannot agree with the trial court that it was not foreseeable as a matter of law that motorists would strike the post.

Further, while there is evidence that this type of fencepost is used by others in the area, expert testimony also concluded that the fencepost was much stronger than it needed to be to support the fence. We also cannot conclude that as a matter of law Craig had a duty to remove his fencepost or design it differently.

The trier of fact must resolve these material issues of fact to determine whether Fulton County and Craig owed Ousley a duty of care. The judgment is reversed, and the matter is remanded for further proceedings not inconsistent with this opinion.

BAILEY, J., and VAIDIK, J., concur.