James SPARKS and Erica Sparks,
Appellants–Defendants,

v.

Barbara WHITE and Chester White,
Appellees–Plaintiffs.

No. 88A01–0804–CV–172.

Court of Appeals of Indiana.

Dec. 16, 2008.

John A. Stroh, Sharpnack Bigley Stroh & Washburn LLP, Columbus, IN, Attorney for Appellants.

John W. Mead, Mead, Mead & Clark, P.C., Salem, IN, Attorney for Appellees.

## OPINION

RILEY, Judge.

### STATEMENT OF THE CASE

Appellants–Defendants, James and Erica Sparks (the Sparkses), appeal the trial court's denial of their motion for summary judgment against Appellees–Plaintiffs, Chester and Barbara White (the Whites), on the Whites' claim for negligence.

We affirm.

### ISSUES

The Sparkses present three issues for our review, which we restate as the following two:

(1) Whether the Sparkses are entitled to summary judgment on the issue of duty; and

(2) Whether the Sparkses are entitled to summary judgment on the issue of proximate cause.

### FACTS AND PROCEDURAL HISTORY

On August 22, 2005, Barbara White (Barbara) was driving south on Voyles Road, a rural, two-lane road outside of Pekin, Indiana. She left her own lane, crossed the northbound lane, drove off the road, and struck the brick mailbox support on the Sparkses' property, which was set three feet from the road. Barbara suffered physical injuries as a result of the collision with the mailbox. There is no evidence in the record on appeal explaining why Barbara left the road.

On June 27, 2007, the Whites filed an Amended Complaint[1] against the Sparkses. The Whites alleged that the Sparkses "were negligent in maintaining an unreasonably dangerous mailbox on their property" and that, as a result of that negligence, Barbara suffered physical and emotional injuries and her husband, Chester, suffered financial damage and loss of consortium. (Appellants' App. pp. 8–9).[2]

---

1. The Whites filed their original complaint on August 21, 2006. Their reasons for filing an Amended Complaint are irrelevant to this appeal.

2. The Whites also named Phil Underwood, the builder of the Sparkses' mailbox, as a defendant, claiming that he constructed the mailbox in a negligent manner. Neither that claim nor Underwood is involved in this appeal.

On July 30, 2007, the Sparkses filed a motion for summary judgment. On November 2, 2007, the Whites filed a response. On January 23, 2008, the trial court held a hearing on the Sparkses' motion. On February 14, 2008, the trial court issued an order denying the Sparkses' motion. On March 11, 2008, the trial court certified its order for interlocutory appeal, and, on May 5, 2008, we accepted jurisdiction over the appeal.

The Sparkses now appeal. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

On appeal, the Sparkses argue that the trial court erred in denying their motion for summary judgment. The standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *Row v. Holt*, 864 N.E.2d 1011, 1013 (Ind.2007). All inferences are to be drawn in favor of the non-moving party. *Id.*

■ The Whites' claims are based upon a theory of negligence. In negligence cases, summary judgment is rarely appropriate. *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind.2004). "This is because negligence cases are particularly fact sensitive and are governed by a standard of the objective reasonable person—one best applied by a jury after hearing all of the evidence." *Id.*

■ The tort of negligence consists of three elements: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty by the defendant; and (3) injury to the plaintiff proximately caused by that breach. *Ford Motor Co. v. Rushford*, 868 N.E.2d 806, 810 (Ind.2007). The Sparkses

contend that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law as to the duty and proximate cause elements. We address each element in turn.

### I. *Duty*

■ Our supreme court has identified three factors to balance in determining whether a particular defendant owed a duty to a plaintiff to conform his conduct to a certain standard: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991), *reh'g denied*. While the determination of whether these factors give rise to a duty is generally a matter for the court to decide, factual questions may be interwoven with the determination of the existence of a factual relationship and the foreseeability of harm, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder. *Ousley v. Bd. of Comm'rs of Fulton County*, 734 N.E.2d 290, 293 (Ind.Ct.App. 2000), *trans. denied*.

■ In their response to the Sparkses' motion for summary judgment, the Whites alleged that the Sparkses owed a duty "to not erect or construct objects in close proximity to the highway that impose an unreasonable risk of harm to the traveling public." (Appellants' App. p. 75). We confronted a similar argument in *Ousley*. In *Ousley*, the decedent was driving his automobile east on a highway in Fulton County when he was struck by a southbound motorist who had failed to yield at a stop sign. The other motorist pushed the decedent's automobile into a steel railroad post serving as a corner fencepost, located six and one-half feet from the edge of the road.

Ousley, decedent's widow, filed a complaint alleging wrongful death against Fulton County and the landowner whose property was adjacent to the intersection and whose fencepost was struck. Ousley claimed that the landowner had a duty to remove the dangerous condition posed by the fencepost to travelers along the adjacent roads. The landowner filed a motion for summary judgment, arguing that "landowners should not owe a duty to motorists when motorists leave the paved portion of a clear and straight intersection where there is no history of other accidents." *Id.* at 292. He also contended that he had no duty to motorists to construct the fencepost in a different manner, noting that the fencepost was constructed of materials similar to those used by other farmers in the area. The trial court granted summary judgment in favor of the landowner, finding that "the intersection had a low amount of traffic, the fencepost had never contributed to an accident, the intersection was flat and straight, and nothing about the intersection was unreasonably dangerous." *Id.* at 293. As such, "it was not foreseeable to [the landowner] that motorists would leave the paved portion of the road and strike the fencepost." *Id.* The trial court also found that the landowner did not have a duty to construct the post differently because the type of corner post was commonly used and the landowner, as a farmer, had a statutory duty to have a fence around his property.

Ousley appealed, arguing that the landowner had a duty of reasonable care in the placement and design of the fencepost. As to the placement of the fencepost, we concluded that there were genuine issues of material fact regarding whether it was foreseeable to the landowner that vehicles would leave the intersection and hit his fencepost. *Id.* at 296. On one hand, the evidence indicated that nothing about the intersection made it particularly danger-

ous, and there was no history of accidents occurring at the intersection. *Id.* On the other hand, "the fencepost [was] located only six and one-half feet from the pavement." *Id.* Therefore, we could not agree with the trial court that it was "not foreseeable as a matter of law that motorists would strike the post." *Id.* As for the design of the fencepost, while there was evidence that the type of fencepost was used by others in the area, there was also expert testimony that "the fencepost was much stronger than it needed to be to support the fence." *Id.* As such, a factual question existed as to whether the landowner had a duty to design his fencepost differently. *Id.* We reversed the trial court's grant of summary judgment in favor of the landowner and remanded the case to the trial court for further proceedings. *Id.*

Here, the Sparkses make essentially the same arguments as the landowner in *Ousley*. The Sparkses contend that no facts existed to put them "on notice that a driver might leave the road." (Appellants' Br. p. 11). They rely on the following evidence: (1) the road in front of their home is straight with no obstruction of sight lines; (2) the mailbox was the only structure to be avoided along that stretch of road if a car drove off the highway; (3) the nearest intersecting road was approximately 100 feet away; and (4) the Sparkses were not aware of any other accidents that have occurred on Voyles Road in front of their home. But, just as we held in *Ousley* that the distance between the road and the fencepost—six and one-half feet— was sufficient to create a genuine issue of material fact as to foreseeability, we hold here that the distance between the road and the mailbox—three feet—is sufficient to create an issue of fact as to whether the Sparkses should have foreseen a collision.

We acknowledge that the Sparkses facilitated mail delivery to their house by placing their mailbox within three feet of the road. Not surprisingly, United States Postal Service mailing standards require that curbside mailboxes "be placed to allow safe and convenient delivery by carriers without leaving their vehicles." (Appellants' App. p. 36). But, again, just as there was expert testimony in *Ousley* that the fencepost was much stronger than it needed to be to support the fence, the Whites designated evidence in this case tending to show that the Sparkses' mailbox was bigger and stronger than it needed to be. The evidence is undisputed that the mailbox was constructed out of brick, and the Whites designated three photos showing that the mailbox was roughly three bricks by three bricks square. The photos also show that Barbara's car sustained serious damage in the collision. Two of those photos appear below:

In addition to the photos, the Whites designated various guidelines for the construction of mailbox supports. The American Association of State Highway and Transportation Officials' "A Guide for Erecting Mailboxes on Highways" states:

Mailbox supports should, with a minor qualification, be no more substantial than required to resist service loads and

reasonably minimize vandalism. Nominal 100 mm × 100 mm square or 100 mm diameter wood posts or 38 mm to 50 mm diameter standard steel or aluminum pipe posts embedded no more than 600 mm into the ground, are the maximum strength supports that should be considered.

(Appellants' App. p. 39). Likewise, the United States Postal Service's Postal Operations Manual provides:

**632.523 Posts and Supports**

The Postal Service does not regulate mailbox supports in any way except for purposes of carrier safety and delivery efficiency. Posts and other supports for curbside mailboxes are owned and controlled by customers, who are responsible for ensuring that posts are neat and adequate in strength and size. Heavy metal posts, concrete posts, and miscellaneous items of farm equipment, such as milk cans filled with concrete, are examples of potentially dangerous supports. The ideal support is an assembly that bends or falls away when struck by a vehicle. . . .

The Federal Highway Administration (FHWA) has determined that mailbox supports no larger than 4 inches by 4 inches, or a 2–inch diameter standard steel or aluminum pipe, buried no more than 24 inches, should safely break away if struck by a vehicle. . . .

(Appellants' App. p. 45).

Though there is no evidence before us specifying the exact size of the Sparkses' mailbox, the photos above depict the wreckage of a mailbox that was substantially larger than the size recommended by the American Association of State Highway Transportation Officials and the United States Postal Service. And while the Sparkses are correct that the mailbox "broke away," the photos indicate that it did not do so without first standing its

ground, resulting in serious damage to Barbara's vehicle and injuries to Barbara. In short, while we cannot fault the Sparkses for setting their mailbox close to the road in accordance with postal service guidelines, a factual question remains as to whether their particular mailbox presented an unreasonable risk of harm to motorists.

We do not hold, as suggested by the Sparkses, that the above-quoted guidelines imposed upon the Sparkses a duty to install a mailbox of a certain size. However, those guidelines are probative evidence of what is reasonable in highway mailbox construction. Furthermore, we do not hold, to use the Sparkses' words, "that bricks are not a suitable material for mailboxes." (Appellants' Br. p. 13). We simply hold, as we did in *Ousley*, that a factual question exists as to whether the Sparkses owed the Whites a duty to design their mailbox differently. *See Ousley*, 734 N.E.2d at 296.

In arguing that they did not owe a duty to the Whites, the Sparkses rely heavily on our opinion in *NIPSCO v. Sell*, 597 N.E.2d 329 (Ind.Ct.App.1992), *trans. denied*. In *Sell*, a driver crossed the center line, left the road, and struck a utility pole. Addressing the relationship component of the duty element of negligence, we said that the relationship between a highway user and an adjacent property owner "is limited to those members of the public using state highways as they were intended to be used. Once the car in which Bernard Sell was a passenger crossed the center line and opposing lane of traffic, the use was no longer legitimate." *Id.* at 332. Turning to the foreseeability component of the duty element of negligence, we held that "NIPSCO was not required to anticipate that [the driver] would fall asleep, thereby losing control of his vehicle, enabling it to cross the center line and opposing lane of traffic, proceed another thirteen feet down

an embankment, striking the pole." *Id.* Because Barbara ceased using Voyles Road as it was "intended to be used" when she left the roadway, our opinion in *Sell* supports the Sparkses' argument.

However, four years after *Sell,* another pan el of this court rejected the *Sell* court's approach. In *Goldsberry v. Grubbs,* 672 N.E.2d 475 (Ind.Ct.App.1996), *trans, denied,* a vehicle left the roadway and struck a utility pole. Disagreeing with *Sell,* the *Goldsberry* majority held that "it is foreseeable that motorists (or their occupants) will leave the traveled portion of a road and strike utility poles set and maintained along that road." *Id.* at 480. More recently, another panel of this court endorsed the *Goldsberry* approach. *See Carter v. Indianapolis Power & Light Co.,* 837 N.E.2d 509, 519 (Ind.Ct.App.2005), *reh'g denied, trans. denied.* Our holding today is in line with *Goldsberry.*

Moreover, our holding is in line with Section 368 of the Restatement (Second) of Torts (1965), which provides:

### § 368. Conditions Dangerous to Travelers on Adjacent Highway

A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

    (a) are traveling on the highway, or

    (b) foreseeably deviate from it in the ordinary course of travel.

Comment E to Section 368 explains that this rule applies

to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveler so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the normal incidents of travel. *This is true particularly where the deviation is inadvertent[.]*

(Emphasis added).

In sum, we conclude that there exist genuine issues of material fact that preclude the entry of summary judgment on the issue of duty. Therefore, we turn to the Sparkses' arguments regarding proximate cause.

### II.  *Proximate Cause*

The Sparkses argue that, even if they owed the Whites a duty, and even if they breached that duty, they are entitled to summary judgment on the proximate cause element. Proximate cause is primarily a question of fact to be determined by the jury. *Rhodes,* 805 N.E.2d at 388. Therefore, ordinarily, the issue of proximate cause is not properly resolved by summary judgment. *Hedrick v. Tabbert,* 722 N.E.2d 1269, 1273 (Ind.Ct.App.2000). "An act or omission is said to be a proximate cause of an injury if the resulting injury was foreseen, or reasonably should have been foreseen, as the natural and probable consequence of the act or omission." *Funston v. Sch. Town of Munster,* 849 N.E.2d 595, 600 (Ind.2006).

The Sparkses contend that they could not have foreseen that Barbara "would drive out of her lane of traffic for no apparent reason, cross the oncoming lane of traffic, leave the road, and not be able to avoid hitting their mailbox." (Appellants' Br. p. 14). We disagree. As the Sparkses note, the plaintiff's burden of proof on foreseeability is higher for purposes of proximate cause than it is for purposes of

the duty analysis. *See Goldsberry,* 672 N.E.2d at 479. Nonetheless, the same factual issues that preclude summary judgment on the duty element also preclude summary judgment on the proximate cause element. In particular, there is a genuine issue of material fact as to whether the Sparkses foresaw or should have foreseen that Barbara would leave the road and strike their mailbox, which was set three feet from the road. Likewise, there is a question of fact as to whether the Sparkses foresaw or should have foreseen that the Whites would have suffered the injuries that they did if Barbara struck the mailbox.

This holding, too, is consistent with Section 368 of the Restatement (Second) of Torts. Comment H to that section provides:

> In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully travelling on the highway and deviating from it, *the essential question is whether it is so placed that travelers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel.* Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far. An open pit three feet from the property line may involve a recognizable hazard to travelers where the same pit thirty feet away would involve no such hazard. Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account.

(Emphasis added).

The Sparkses emphasize the possibility that Barbara might have violated her own duty to maintain reasonable control over her vehicle. That is certainly possible; there is no evidence in the record on appeal that indicates why Barbara left the road. But that possibility merely reframes the question: should the Sparkses have foreseen that a driver on Voyles Road would lose control of his or her vehicle and strike the mailbox set three feet from the road? This is a question for the jury.

■ Finally, we note that, under Indiana's comparative fault regime, even if the jury determines that the Sparkses should have foreseen the collision, the Whites will not recover any damages from the Sparkses if the jury also concludes that Barbara was more than fifty percent at fault for her and her husband's injuries. *See* Ind.Code § 34–51–2–6. Judging by the facts before us, that is a real possibility. But, as our supreme court has noted, "The Comparative Fault Act entrusts the allocation of fault to the sound judgment of the fact-finder." *Paragon Family Rest. v. Bartolini,* 799 N.E.2d 1048, 1056 (Ind. 2003). Again, summary judgment is rarely appropriate in negligence cases. *Rhodes,* 805 N.E.2d at 387. This is not one of those rare cases.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not err in denying the Sparkses' motion for summary judgment. Therefore, we remand this cause to the trial court for further proceedings.

Affirmed.

BAILEY, J., and BRADFORD, J., concur.